MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

ESTEBAN FLORES BARRETO PELON, ENRIQUE J. BALDERAS, FRANCISCO FLORES BARRETO, EDGAR EDUARDO MONTERROSO LOPEZ, DAGOBERTO FLORES BARRETO, HECTOR PLIEGO MASTACHE, HILARIO BARRETO GARCIA (A.K.A. WILLY), JOSE MANUEL BARRETO CORTEZ, JUAN ZEFERINO, JOSE VICTOR GARCIA CASTELAN (A/K/A VICTOR GARCIA), SERGIO GARCIA CASTELAN, BALTAZAR DE LOS SANTOS HERNANDEZ, EDUARDO DE JESUS NORIEGA, FABIAN DE JESUS GREGORIO, HONORIO CANDIA LIBRADO, JUAN CARLOS CARDENAS, MARCELINO CRUZ, MELVIN RAMIREZ, MILAN FLORES HELADIO, RAUL VILLEGAS PERALTA, ANTONIO LOPEZ, JUAN PABLO BARRETO ANZURES, OCTAVIO PERALTA MARCELO, WILMER BATEN, SIXTO VICENTE, ELICIAS LORENZO MEJIA SAPON, JILMAR RAMIREZ (A/K/A JOSE PEREZ), RAFAEL VALENCIA ORTEGA, and JUAN JOSE CRUZ GARCIA, *on behalf of others similarly situated,*

Docket No.: **19-CV-00502 (RWL)**

SECOND AMENDED COMPLAINT

COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) AND RULE 23 CLASS ACTION

*Plaintiffs*,

-against-

GABI OPERATING CORP. (D/B/A MARINARA PIZZA (F/D/B/A SABA'S PIZZA)), BRITTGAB CORP. (D/B/A SABA'S PIZZA), PIZZA 84 LLC (D/B/A MARINARA PIZZA), PIZZA 54 INC. (D/B/A MARINARA PIZZA), MOSHGAB CORP. (D/B/A SABA'S PIZZA), PIZZA 26 LLC (D/B/A MARINARA PIZZA), PIZZA 10 LLC (D/B/A MARINARA PIZZA), GABRIEL WEISER and JONATHAN BANAYAN,

*Defendants.*

-------------------------------------------------------------------X

Plaintiffs (and the FLSA and Rule 23 class members) Esteban Flores Barreto Pelon, Enrique J. Balderas, Francisco Flores Barreto, Edgar Eduardo Monterroso Lopez, Dagoberto Flores Barreto, Hector Pliego Mastache, Hilario Barreto Garcia (a.k.a. Willy), Jose Manuel Barreto Cortez, Juan Zeferino, Jose Victor Garcia Castelan (a/k/a Victor Garcia), Sergio Garcia Castelan, Baltazar De Los Santos Hernandez, Eduardo De Jesus Noriega, Fabian De Jesus Gregorio, Honorio Candia Librado, Juan Carlos Cardenas, Marcelino Cruz, Melvin Ramirez, Milan Flores Heladio, Raul Villegas Peralta, Antonio Lopez, Juan Pablo Barreto Anzures, Octavio Peralta Marcelo, Wilmer Baten, Sixto Vicente, Elicias Lorenzo Mejia Sapon, Jilmar Ramirez (a/k/a Jose Perez), Rafael Valencia Ortega, and Juan Jose Cruz Garcia, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Gabi Operating Corp. (d/b/a Marinara Pizza (f/d/b/a Saba's Pizza)), Brittgab Corp. (d/b/a Saba's Pizza), Pizza 84 LLC (d/b/a Marinara Pizza), Pizza 54 Inc. (d/b/a Marinara Pizza), Moshgab Corp. (d/b/a Saba's Pizza), Pizza 26, LLC (d/b/a Marinara Pizza), Pizza 10, LLC (d/b/a Marinara Pizza) ("Corporate Defendants"), Gabriel Weiser, and Jonathan Banayan ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.    Plaintiffs are present and former employees of Defendants Gabi Operating Corp. (d/b/a Marinara Pizza (f/d/b/a Saba's Pizza)), Brittgab Corp. (d/b/a Saba's Pizza), Pizza 84, LLC (d/b/a Marinara Pizza), Pizza 54 Inc. (d/b/a Marinara), Gabriel Weiser, and Jonathan Banayan.

2.    Defendants own, operate, or control seven pizzerias, located at 1376 Lexington Avenue New York, New York 10128 under the name "Marinara Pizza" (f/d/b/a Saba's Pizza) (at times, referred to as "the 1376 Lexington Avenue location"), at 1217 Lexington Avenue New York,

New York 10028 under the name "Saba's Pizza" (at times, referred to as "the 1217 Lexington Avenue location"), at 985 1st Avenue, New York, New York 10022 under the name "Marinara Pizza" (at times, referred to as "the First Avenue location"), at 483 Amsterdam Avenue, New York, New York 10024 under the name "Marinara Pizza" (at times, referred to as "the Amsterdam Avenue location"), at 403 Amsterdam Avenue, New York, New York 10024 under the name "Saba's Pizza," at 160 Second Avenue, New York, New York 10003 under the name "Marinara Pizza," and at 379 Park Avenue South, New York, New York 10016 under the name "Marinara Pizza."

3.    Upon information and belief, individual Defendants Gabriel Weiser and Jonathan Banayan serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.    Plaintiffs are former and current employees who were employed by Defendants as cooks, food preparers, dishwashers, and ostensibly as delivery workers at the 1376 Lexington Avenue location, 1217 Lexington Avenue location, First Avenue location, and Amsterdam Avenue location.

5.    Plaintiffs ostensibly have been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to, washing and cutting vegetables; assembling pizza boxes; mopping kitchen and restaurant floors; sweeping; stocking the refrigerator with soda; organizing inventory; unloading supplies for pizza making; preparing pizza dough and sauces; shredding cheese; assembling and baking pizzas; weighing food; taking out the garbage; vacuuming; placing carpets on the floor; fixing tables; bringing chairs upstairs and back downstairs; bringing up food from downstairs; cleaning the counter glass, pizza tables, basement, store windows, containers, dishes, utensils, and floor mats;

cleaning and stocking the restrooms, frying French fries, falafel, and onion rings; providing customer service; and working as cashiers (hereinafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      In addition, Defendants failed to maintain accurate recordkeeping of the hours Plaintiffs worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours a day.

9.      Defendants employed and accounted for most Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.      Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that is either equal to or lower than the required tip-credit rate.

11.      However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  N.Y. COMP. CODES R. & REGS. tit. 12 ("NYCRR"), §146.

12.      Upon information and belief, Defendants have employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and has enabled them to pay them at the tip-credit rate (which in some occasions they still have failed to do).

13.     Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all other similarly situated employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated employees, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL") and the Hospitality Wage Order of the New York Commissioner of Labor codified at NYCCR § 146, as well as for liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims have occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate seven pizzerias located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.     Plaintiff Esteban Flores Barreto Pelon ("Plaintiff Barreto" or "Mr. Barreto") is an adult individual residing in New York County, New York.

20.     Plaintiff Barreto was employed by Defendants at Marinara Pizza (f/d/b/a Saba's Pizza) at the 1376 Lexington Ave location from approximately January 2012 until on or about July 2018.

21.     Plaintiff Barreto was then employed by Defendants at Marinara Pizza Midtown East at the First Avenue location from approximately August 2018 to the end of September 2018.

22.     Plaintiff Barreto was then employed by Defendants at Marinara Pizza (f/d/b/a Saba's Pizza) at th1376 Lexington Avenue location from October 2018 until December 19, 2018.

23.     Plaintiff Enrique J. Balderas ("Plaintiff Balderas" or "Mr. Balderas") is an adult individual residing in New York County, New York.

24.     Plaintiff Balderas was employed by Defendants at Marinara Pizza (f/d/b/a Saba's Pizza) at the 1376 Lexington Avenue location from approximately May 2016 until in or about February 2018.

25.     Plaintiff Francisco Flores Barreto ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in New York County, New York.

26.     Plaintiff Flores was employed by Defendants at Marinara Pizza (f/d/b/a Saba's Pizza) at the 1376 Lexington Avenue location from approximately November 2012 until on or about February 2016.

27.     Plaintiff Flores was employed by Defendants at Saba's Pizza at the 1217 Lexington Avenue location from approximately March 2016 until in or about November 2016.

28.     Plaintiff Flores was then employed by Defendants at Marinara Pizza (f/d/b/a Saba's Pizza) at the 1376 Lexington Avenue location from November 2016 until on or about December 19, 2018.

29.     Plaintiff Edgar Eduardo Monterroso Lopez ("Plaintiff Monterroso" or "Mr. Monterroso") is an adult individual residing in New York County, New York.

30.     Plaintiff Monterroso was employed by Defendants at Saba's Pizza at the 1217 Lexington Avenue location from approximately January 5, 2019 until on or about March 21, 2019.

31.     Plaintiff Dagoberto Flores Barreto ("Plaintiff Dagoberto" or "Mr. Dagoberto") is an adult individual residing in New York County, New York.

32.     Plaintiff Dagoberto was employed by Defendants at "Saba's Pizza" at the 1217 Lexington Avenue location from approximately January 2015 until on or about April 9, 2019.

33.     Plaintiff Hector Pliego Mastache ("Plaintiff Pliego" or "Mr. Pliego") is an adult individual residing in Queens County, New York.

34.     Plaintiff Pliego was employed by Defendants at Marinara Pizza (f/d/b/a Saba's Pizza) at the 1376 Lexington Avenue location from approximately May 2017 until in or about November 2018

35.     Plaintiff Pliego was employed by Defendants at the First Avenue location from approximately December 2018 until on or about April 16, 2019.

36.     Plaintiff Hilario Barreto Garcia (a.k.a. Willy) ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in New York County, New York.

37.    Plaintiff Garcia was employed by Defendants at the 1217 Lexington Avenue location from approximately January 2012 until on or about February 13, 2019.

38.    Plaintiff Jose Manuel Barreto Cortez ("Plaintiff Cortez" or "Mr. Cortez") is an adult individual residing in New York County, New York.

39.    Plaintiff Cortez was employed by Defendants at the 1376 Lexington Avenue location from approximately May 2017 until in or about September 2017 and from approximately January 2018 until in or about February 2018.

40.    Plaintiff Juan Zeferino ("Plaintiff Zeferino" or "Mr. Zeferino") is an adult individual residing in Bronx County, New York.

41.    Plaintiff Zeferino was employed by Defendants at the 1217 Lexington Avenue location from approximately July 3, 2017 until on or about March 3, 2019.

42.    Plaintiff Jose Victor Garcia Castelan (a/k/a Victor Garcia) ("Plaintiff Castelan" or "Mr. Castelan") is an adult individual residing in Queens County, New York.

43.    Plaintiff Castelan was employed by Defendants at the 1376 Lexington Avenue location from approximately March 2018 until on or about May 15, 2018

44.    Plaintiff Castelan was employed by Defendants at the First Avenue location from approximately May 16, 2018 until in or about July 2018.

45.    Plaintiff Sergio Garcia Castelan ("Plaintiff Sergio" or "Mr. Sergio") is an adult individual residing in Queens, New York.

46.    Plaintiff Sergio was employed by Defendants at the 1376 Lexington Avenue location from approximately April 2018 until on or about May 15, 2018

47.    Plaintiff Sergio was employed by Defendants at the First Avenue location from approximately May 16, 2018 until in or about July 2018.

48.    Plaintiff Baltazar de los Santos Hernandez ("Plaintiff de los Santos" or "Mr. De los Santos") is an adult individual residing in Bronx County, New York.

49.    Plaintiff de los Santos was employed by Defendants at the Amsterdam Avenue location from approximately January 2019 until on or about June 2, 2019.

50.    Plaintiff Eduardo de Jesus Noriega ("Plaintiff De Jesus" or "Mr. De Jesus") is an adult individual residing in New York County, New York.

51.    Plaintiff De Jesus was employed by Defendants at the Amsterdam Avenue location from approximately January 2, 2019 until on or about June 2, 2019.

52.    Plaintiff Fabian de Jesus Gregorio ("Plaintiff Gregorio" or "Mr. Gregorio") is an adult individual residing in Bronx County, New York.

53.    Plaintiff Gregorio was employed by Defendants at the 985 First Avenue location from approximately June 2018 until on or about December 2018 and has been employed at the 483 Amsterdam Avenue location from approximately January 2019 until the present date.

54.    Plaintiff Alvarez was employed by Defendants at the 985 First Avenue location from approximately February 2019 until on or about June 17, 2019.

55.    Plaintiff Honorio Candia Librado ("Plaintiff Candia" or "Mr. Candia") is an adult individual residing in New York County, New York.

56.    Plaintiff Candia was employed by Defendants at the Amsterdam Avenue location from approximately January 2019 until on or about June 2, 2019.

57.    Plaintiff Juan Carlos Cardenas ("Plaintiff Cardenas" or "Mr. Cardenas") is an adult individual residing in Queens County, New York.

58.    Plaintiff Cardenas was employed by Defendants at the First Avenue location from approximately February 2019 until on or about June 17, 2019.

59.      Plaintiff Marcelino Cruz ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in New York County, New York.

60.      Plaintiff Cruz was employed by Defendants at the First Avenue location from approximately January 2019 until on or about June 15, 2019.

61.      Plaintiff Melvin Ramirez ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in New York County, New York.

62.      Plaintiff Ramirez was employed by Defendants at the 1217 Lexington Avenue location from approximately May 2018 until on or about June 10, 2019.

63.      Plaintiff Milan Flores Heladio ("Plaintiff Heladio" or "Mr. Heladio") is an adult individual residing in Bronx County, New York.

64.      Plaintiff Heladio was employed by Defendants at the Amsterdam Avenue location from approximately January 2019 until on or about June 2, 2019.

65.      Plaintiff Raul Villegas Peralta ("Plaintiff Villegas" or "Mr. Villegas") is an adult individual residing in Bronx County, New York.

66.      Plaintiff Villegas was employed by Defendants at the Amsterdam Avenue location from approximately February 2019 until in or about May 2019.

67.      Plaintiff Antonio Lopez ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in Bronx County, New York.

68.      Plaintiff Lopez was employed by Defendants at the 1376 Lexington Avenue location from approximately June 2018 until on or about June 17, 2019.

69.      Plaintiff Juan Pablo Barreto Anzures ("Plaintiff Anzures" or "Mr. Anzures") is an adult individual residing in Bronx County, New York.

70.     Plaintiff Anzures was employed by Defendants at the 1376 Lexington Avenue location from approximately June 14, 2018 until on or about June 22, 2019.

71.     Plaintiff Octavio Peralta Marcelo ("Plaintiff Peralta" or "Mr. Peralta") is an adult individual residing in Bronx County, New York.

72.     Plaintiff Peralta was employed by Defendants at the First Avenue location from approximately August 2018 until in or about September 2018.

73.     Plaintiff Peralta was employed by Defendants at the 1376 Lexington Avenue location from approximately October 2018 until on or about June 17, 2019.

74.     Plaintiff Wilmer Baten ("Plaintiff Baten" or "Mr. Baten") is an adult individual residing in Bronx County, New York.

75.     Plaintiff Baten was employed by Defendants at the 1376 Lexington Avenue location from approximately June 2018 until on or about June 16, 2019.

76.     Plaintiff Sixto Vicente ("Plaintiff Vicente" or "Mr. Vicente") is an adult individual residing in Bronx County, New York.

77.     Plaintiff Vicente was employed by Defendants at the 1376 Lexington Avenue location from approximately August 2017 until in or about March 2019

78.     Plaintiff Vicente was employed by Defendants at the First Avenue location from approximately April 2019 until on or about June 17, 2019.

79.     Plaintiff Elicias Lorenzo Mejia Sapon ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Queens County, New York.

80.     Plaintiff Mejia was employed by Defendants at the First Avenue location from approximately December 4, 2018 until on or about May 28, 2019.

81.    Plaintiff Jilmar Ramirez (a/k/a Jose Perez) ("plaintiff Gilmar" or "Mr. Gilmar") is an adult individual residing in New York County, New York.

82.    Plaintiff Gilmar was employed by Defendants at the First Avenue location from approximately February 2019 until on or about June 17, 2019.

83.    Plaintiff Rafael Valencia Ortega ("Plaintiff Valencia" or "Mr. Valencia") is an adult individual residing in Bronx County, New York.

84.    Plaintiff Valencia was employed by Defendants at the 1376 Lexington Avenue location from approximately June 2017 until in or about January 2018.

85.     Plaintiff Valencia was employed by Defendants at the 1376 Lexington Avenue location and the First Avenue location from approximately February 2018 until in or about April 2018.

86.    Plaintiff Valencia was employed by Defendants at the 1376 Lexington Avenue location from approximately May 2018 until in or about June 2018.

87.    Plaintiff Juan Jose Cruz Garcia ("Plaintiff Cruz Garcia" or "Mr. Cruz Garcia") is an adult individual residing in Bronx County, New York.

88.    Plaintiff Cruz Garcia was employed by Defendants at the Amsterdam Avenue location from approximately November 2017 until on or about June 15, 2018.

89.    Plaintiff Cruz Garcia was employed by Defendants at the First Avenue location from approximately June 16, 2018 until on or about August 28, 2020.

*Defendants*

90.    At all relevant times, Defendants own, operate, or control seven pizzerias, located at 1376 Lexington Avenue New York, New York 10128 under the name "Marinara Pizza (f/d/b/a Saba's Pizza)," at 1217 Lexington Avenue New York, New York 10028 under the name "Saba's

Pizza," at 985 1ˢᵗ Avenue, New York, New York 10022 under the name "Marinara Pizza," at 483 Amsterdam Avenue, New York, New York 10024 under the name "Marinara Pizza," at 403 Amsterdam Avenue, New York, New York 10024 under the name "Saba's Pizza," at 160 Second Avenue, New York, New York 10003 under the name "Marinara Pizza," and at 379 Park Avenue South, New York, New York 10016 under the name "Marinara Pizza."

91.    Upon information and belief, Gabi Operating Corp. (d/b/a Marinara Pizza (f/d/b/a Saba's Pizza)) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1376 Lexington Avenue New York, New York 10128.

92.    Upon information and belief, Brittgab Corp. (d/b/a Saba's Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1217 Lexington Avenue New York, New York 10028.

93.    Upon information and belief, Pizza 84 LLC (d/b/a Marinara Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 483 Amsterdam Avenue, New York, New York 10024.

94.    Upon information and belief, Pizza 54 Inc. (d/b/a Marinara Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 985 First Avenue, New York, New York 10022.

95.    Upon information and belief, Moshgab Corp. (d/b/a Saba's Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and

belief, it maintains its principal place of business at 403 Amsterdam Avenue, New York, New York 10024.

96.    Upon information and belief, Pizza 26 LLC (d/b/a Marinara Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 379 Park Avenue South, New York, New York 10016.

97.    Upon information and belief, Pizza 10 LLC (d/b/a Marinara Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 160 Second Avenue, New York, New York 10003.

98.    Defendant Gabriel Weiser is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gabriel Weiser is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Gabriel Weiser possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

99.    Defendant Jonathan Banayan is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jonathan Banayan is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Jonathan Banayan possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He

determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

100.    Defendants operate seven pizzerias located in multiple neighborhoods in Manhattan.

101.    Individual Defendants, Gabriel Weiser and Jonathan Banayan possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

102.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

103.    Each Defendant has possessed substantial control over Plaintiffs and all similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs and all similarly situated employees referred to herein.

104.    Defendants jointly have employed Plaintiffs and all similarly situated employees and are Plaintiffs and all similarly situated employees' employers within the meaning of 29 U.S.C. §201 *et seq*. and the NYLL.

105.    In the alternative, Defendants constitute a single employer of Plaintiffs and all similarly situated employees.

106.    Upon information and belief, Individual Defendants Gabriel Weiser and Jonathan Banayan operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of their own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

107.    At all relevant times, Defendants were Plaintiffs and all similarly situated employees' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs and all similarly situated employees, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their services.

108.    In each year from 2013 to the present date, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

109.    In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that have been used in the restaurants on a daily basis, such as sauce, cheese, and dough, are goods produced outside of the State of New York.

*Individual Plaintiffs*

110.    Plaintiffs are former and current employees who have been employed as cooks, food preparers, dishwashers, and ostensibly as delivery workers. However, the delivery workers have spent over 20% of each shift performing the non-tipped duties described above.

*Plaintiff Esteban Flores Barreto Pelon*

111.    Plaintiff Barreto was employed by Defendants from approximately January 2012 until on or about December 19, 2018.

112.    Defendants ostensibly employed Plaintiff Barreto as a delivery worker.

113.    However, Plaintiff Barreto was also required to spend a significant portion of his work day performing the non-tipped duties described above.

114.    Although Plaintiff Barreto ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

115.    Plaintiff Barreto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

116.    Plaintiff Barreto's work duties required neither discretion nor independent judgment.

117.    Throughout his employment with Defendants, Plaintiff Barreto regularly worked in excess of 40 hours per week.

118.    From approximately January 2013 until in or about November 2016, Plaintiff Barreto worked from approximately 10:00 a.m. until on or about 9:30 p.m., Mondays through Thursdays,

from approximately 9:00 a.m. until on or about 6:00 p.m., on Fridays, from approximately 5:00 p.m. until on or about 11:00 p.m., on Saturdays, and from approximately 9:00 a.m. until on or about 10:00 p.m., on Sundays (typically 74 hours per week).

119.    From approximately December 2016 until in or about March 2018, Plaintiff Barreto worked from approximately 9:00 a.m. until on or about 9:00 p.m., on Mondays, Wednesdays, Thursdays and Fridays and from approximately 4:00 p.m. until on or about 10:00 p.m., on Saturdays and Sundays (typically 60 hours per week).

120.    From approximately April 2018 until on or about December 19, 2018, Plaintiff Barreto worked from approximately 11:00 a.m. until on or about 11:00 p.m., two days a week and from approximately 3:30 p.m. until on or about 11:00 p.m., four days a week (typically 54 hours per week).

121.    Throughout his employment, Defendants paid Plaintiff Barreto his wages in cash.

122.    From approximately January 2013 until in or about November 2013, Defendants paid Plaintiff Barreto a fixed salary of $300 per week.

123.    From approximately December 2013 until on or about the end of December 2013, Defendants paid Plaintiff Barreto a fixed salary of $350 per week.

124.    From approximately January 2014 until in or about December 2014, Defendants paid Plaintiff Barreto a fixed salary of $380 per week.

125.    From approximately January 2015 until in or about December 2015, Defendants paid Plaintiff Barreto a fixed salary of $430 per week.

126.    From approximately January 2016 until in or about November 2016, Defendants paid Plaintiff Barreto a fixed salary of $480 to $500 per week.

127.    From approximately December 2016 until on or about the end of December 2016, Defendants paid Plaintiff Barreto $6.25 per hour and at an overtime rate of $9.37 per hour.

128.    From approximately January 2017 until in or about December 2017, Defendants paid Plaintiff Barreto $7.25 per hour and at an overtime rate of $10.87 per hour.

129.    From approximately January 2018 until on or about December 19, 2018, Defendants paid Plaintiff Barreto $10.85 per hour and at an overtime rate of $17.25 per hour.

130.    Plaintiff Barreto's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

131.    Plaintiff Barreto was never notified by Defendants that his tips were being included as an offset for wages.

132.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Barreto's wages.

133.    Plaintiff Barreto was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked before November 2016.

134.    Defendants required Plaintiff Barreto to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

135.    On a number of occasions, Defendants required Plaintiff Barreto to sign a document, the contents of which he was not allowed to review in detail.

136.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Barreto regarding overtime and wages under the FLSA and NYLL.

137.    Defendants did not provide Plaintiff Barreto with an accurate statement of wages, as required by NYLL §195(3).

138.    Defendants did not give any notice to Plaintiff Barreto, in English and in Spanish (Plaintiff Barreto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

139.    Defendants required Plaintiff Barreto to purchase "tools of the trade" with his own funds, including two electric bicycles, four regular bicycles, four helmets, rain gear, and cell phone charges.

*Plaintiff Enrique J. Balderas*

140.    Plaintiff Balderas was employed by Defendants from approximately May 2016 until in or about February 2018.

141.    Defendants ostensibly employed Plaintiff Balderas as a delivery worker.

142.    However, Plaintiff Balderas was also required to spend a significant portion of his work day performing the non-tipped duties described above.

143.    Although Plaintiff Balderas ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

144.    Plaintiff Balderas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

145.    Plaintiff Balderas's work duties required neither discretion nor independent judgment.

146.    From approximately May 2016 until in or about November 2016, Plaintiff Balderas worked from approximately 3:00 p.m. until on or about 10:00 p.m. 5 days a week (typically 35 hours per week).

147.    From approximately December 2016 until in or about February 2018, Plaintiff Balderas worked from approximately 3:00 p.m. until on or about 10:00 p.m., 4 days a week (typically 28 hours per week).

148.    Throughout his employment, Defendants paid Plaintiff Balderas his wages in cash.

149.    From approximately May 2016 until in or about January 2017, Defendants paid Plaintiff Balderas $7.75 per hour.

150.    From approximately February 2017 until in or about February 2018, Defendants paid Plaintiff Balderas $10.75 per hour.

151.    Plaintiff Balderas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

152.    For example, Defendants required Plaintiff Balderas to work an additional 30 minutes past his scheduled departure time twice a week, and did not pay him for the additional time he worked.

153.    Defendants never granted Plaintiff Balderas any breaks or meal periods of any kind.

154.    Plaintiff Balderas was never notified by Defendants that his tips were being included as an offset for wages.

155.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Balderas's wages.

156.    Defendants required Plaintiff Balderas to sign a document in order to release his weekly pay.

157.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Balderas regarding overtime and wages under the FLSA and NYLL.

158.    Defendants did not provide Plaintiff Balderas with an accurate statement of wages, as required by NYLL §195(3).

159.    Defendants did not give any notice to Plaintiff Balderas, in English and in Spanish (Plaintiff Balderas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

160.    Defendants required Plaintiff Balderas to purchase "tools of the trade" with his own funds, including one electric bicycle, one helmet, and rain gear.

*Plaintiff Francisco Flores Barreto*

161.    Plaintiff Flores was employed by Defendants from approximately November 2012 until in or about December 19, 2018.

162.    Defendants ostensibly employed Plaintiff Flores as a delivery worker.

163.    However, Plaintiff Flores was also required to spend a significant portion of his work day performing the non-tipped duties described above.

164.    Although Plaintiff Flores ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

165.    Plaintiff Flores regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

166.    Plaintiff Flores's work duties required neither discretion nor independent judgment.

167.    Throughout his employment with Defendants, Plaintiff Flores regularly worked in excess of 40 hours per week.

168.     From approximately January 2013 until in or about February 2016, Plaintiff Flores worked at the 1376 Lexington Avenue location from approximately 9:00 a.m. until on or about 9:00 p.m. Sundays through Thursdays, from approximately 9:00 a.m. until on or about 4:00 p.m. on Fridays, and from approximately 5:00 p.m. until on or about 12:00 a.m. on Saturdays (typically 74 hours per week).

169.     From approximately March 2016 until in or about November 2016, Plaintiff Flores worked at the 1217 Lexington Avenue location from approximately 9:00 a.m. until on or about 9:00 p.m., Tuesdays through Thursdays, from approximately 9:00 a.m. until on or about 4:00 p.m., on Fridays, from approximately 5:00 p.m. until on or about 12:00 a.m., on Saturdays, and from approximately 9:00 a.m. until on or about 9:00 p.m., on Sundays (typically 62 hours per week).

170.     From approximately November 2016 until on or about December 19, 2018, Plaintiff Flores worked at the 1376 Lexington Avenue location from approximately 3:00 p.m. until on or about 11:00 p.m., Tuesdays through Sundays (typically 48 hours per week).

171.     Throughout his employment, Defendants paid Plaintiff Flores his wages in cash.

172.     From approximately January 2013 until in or about December 2013, Defendants paid Plaintiff Flores a fixed salary of $380 per week.

173.     From approximately January 2014 until in or about February 2016, Defendants paid Plaintiff Flores a fixed salary of $420 per week.

174.     From approximately March 2016 until in or about January 2018, Defendants paid Plaintiff Flores $9.00 per hour.

175.     From approximately February 2018 until on or about December 19, 2018, Defendants paid Plaintiff Flores $10.75 per hour and $16.00 per hour for overtime.

176.    Although Defendants granted Plaintiff Flores ten to fifteen minute meal breaks, defendants constantly interrupted such breaks by requiring Plaintiff Flores to go make deliveries during the breaks.

177.    Plaintiff Flores was never notified by Defendants that his tips were being included as an offset for wages.

178.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Flores's wages.

179.    Prior to March 2016, Plaintiff Flores was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

180.    Defendants required Plaintiff Flores to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

181.    On a number of occasions, Defendants required Plaintiff Flores to sign a document, the contents of which he was not allowed to review in detail.

182.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

183.    Defendants did not provide Plaintiff Flores with an accurate statement of wages, as required by NYLL §195(3).

184.    Defendants did not give any notice to Plaintiff Flores, in English and in Spanish (Plaintiff Flores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

185.    Defendants required Plaintiff Flores to purchase "tools of the trade" with his own funds—including one regular bicycle and two electric bicycles.

*Plaintiff Edgar Eduardo Monterroso Lopez*

186.     Plaintiff Monterroso was employed by Defendants from approximately January 5, 2019 until on or about March 21, 2019.

187.     Defendants ostensibly employed Plaintiff Monterroso as a delivery worker.

188.     However, Plaintiff Monterroso was also required to spend a significant portion of his work day performing the non-tipped duties described above.

189.     Although Plaintiff Monterroso ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

190.     Plaintiff Monterroso regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

191.     Plaintiff Monterroso's work duties required neither discretion nor independent judgment.

192.     Throughout his employment with Defendants, Plaintiff Monterroso regularly worked in excess of 40 hours per week.

193.     From approximately January 5, 2019 until on or about March 21, 2019, Plaintiff Monterroso worked at the 1217 Lexington Avenue location from approximately 3:30 p.m. until on or about 10:30 p.m., Mondays through Thursdays, from approximately 6:00 p.m. until on or about 12:30 a.m., on Saturdays, and from approximately 4:00 p.m. until on or about 10:30 p.m., on Sundays (typically 41 hours per week).

194.     Throughout his employment, Defendants paid Plaintiff Monterroso his wages in cash.

195.     From approximately January 5, 2019 until on or about March 21, 2019, Defendants paid Plaintiff Monterroso $10.80 per hour.

196.    Defendants never granted Plaintiff Monterroso any breaks or meal periods of any kind.

197.    Plaintiff Monterroso was never notified by Defendants that his tips were being included as an offset for wages.

198.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Monterroso's wages.

199.    Defendants required Plaintiff Monterroso to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

200.    On a number of occasions, Defendants required Plaintiff Monterroso to sign a document falsely showing that he was making $612.00 per week, when that was indeed incorrect.

201.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Monterroso regarding overtime and wages under the FLSA and NYLL.

202.    Defendants did not provide Plaintiff Monterroso with an accurate statement of wages, as required by NYLL §195(3).

203.    Defendants did not give any notice to Plaintiff Monterroso, in English and in Spanish (Plaintiff Monterroso's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

204.    Defendants required Plaintiff Monterroso to purchase "tools of the trade" with his own funds, including one bicycle, one helmet, and uniforms.

*Plaintiff Dagoberto Flores Barreto*

205.    Plaintiff Dagoberto was employed by Defendants from approximately January 2015 until on or about April 9, 2019.

206.    Defendants ostensibly employed Plaintiff Dagoberto as a delivery worker.

207.    However, Plaintiff Dagoberto was also required to spend a significant portion of his work day performing the non-tipped duties described above.

208.    Although Plaintiff Dagoberto ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

209.    Plaintiff Dagoberto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

210.    Plaintiff Dagoberto's work duties required neither discretion nor independent judgment.

211.    Throughout his employment with Defendants, Plaintiff Dagoberto regularly worked in excess of 40 hours per week.

212.    From approximately January 2015 until in or about December 2018, Plaintiff Dagoberto worked at the 1217 Lexington Avenue location from approximately 9:00 a.m. until on or about 10:15 p.m., six days a week (typically 79.5 hours per week).

213.    From approximately January 2019 until in or about April 2019, Plaintiff Dagoberto worked at the 1217 Lexington Avenue location from approximately 9:00 a.m. until on or about 7:45 p.m. five days a week (typically 53.75 hours per week).

214.    Throughout his employment, Defendants paid Plaintiff Dagoberto his wages in cash.

215.    From approximately January 2015 until in or about June 2017, Defendants paid Plaintiff Dagoberto a fixed salary of $320 per week.

216.    From approximately July 2017 until in or about December 2017, Defendants paid Plaintiff Dagoberto a fixed salary of $340 per week.

217.    From approximately January 2018 until in or about April 2019, Defendants paid Plaintiff Dagoberto a fixed salary of $380 per week.

218.    Plaintiff Dagoberto's pay did not vary even when defendants required him to stay later or work a longer day than his usual schedule.

219.    For example, Defendants required Plaintiff Dagoberto to work an additional 15 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

220.    Defendants never granted Plaintiff Dagoberto any breaks or meal periods of any kind.

221.    Plaintiff Dagoberto was never notified by Defendants that his tips were being included as an offset for wages.

222.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Dagoberto's wages.

223.    Defendants withheld a portion of Plaintiff Dagoberto's tips; specifically, Defendants withheld all of the tips customers wrote in for Plaintiff Dagoberto on credit card orders, whether they were large catering orders or regular deliveries.

224.    Prior to February 2019, Defendants entered a false number of hours worked for Plaintiff Dagoberto; thus, the hours recorded for Plaintiff Dagoberto prior to February 2019 were always inaccurate.

225.    Defendants required Plaintiff Dagoberto to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

226.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Dagoberto regarding overtime and wages under the FLSA and NYLL.

227.    Defendants did not provide Plaintiff Dagoberto with an accurate statement of wages, as required by NYLL §195(3).

228.    Defendants did not give any notice to Plaintiff Dagoberto, in English and in Spanish (Plaintiff Dagoberto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

229.    Defendants required Plaintiff Dagoberto to purchase "tools of the trade" with his own funds, including four bicycles, two vests, a raincoat, a pair of boots, two pairs of waterproof pants, a helmet, and monthly bicycle maintenance.

*Plaintiff Hector Pliego Mastache*

230.    Plaintiff Pliego was employed by Defendants from approximately May 2017 until on or about April 16, 2019.

231.    Defendants employed Plaintiff Pliego as a cook, a dishwasher, and a food preparer.

232.    Plaintiff Pliego regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

233.    Plaintiff Pliego's work duties required neither discretion nor independent judgment.

234.    Throughout his employment with Defendants, Plaintiff Pliego regularly worked in excess of 40 hours per week.

235.    From approximately May 2017 until in or about November 2018, Plaintiff Pliego worked at the 1376 Lexington Avenue location from approximately 9:00 a.m. until on or about 10:30 p.m., three days a week and from approximately 10:00 a.m. until on or about 10:00 p.m. three days a week (typically 76.5 hours per week).

236.    From approximately December 2018 until on or about April 16, 2019, Plaintiff Pliego worked at the First Avenue location from approximately 10:00 a.m. until on or about 10:00 p.m. five days a week (typically 60 hours per week).

237.    From approximately May 2017 until in or about December 2018, Defendants paid Plaintiff Pliego his wages in cash.

238.    From approximately January 2019 until on or about April 16, 2019, Defendants paid Plaintiff Pliego his wages in a combination of check and cash.

239.    From approximately May 2017 until in or about August 2017, Defendants paid Plaintiff Pliego $13.00 per hour for the first 40 hours worked in a week and $19.50 per hour for the hours worked over 40 in a week.

240.    From approximately September 2017 until in or about December 2018, Defendants paid Plaintiff Pliego $14.00 per hour for the first 40 hours worked in a week and $19.50 per hour for the hours worked over 40 in a week.

241.    From approximately January 2019 until on or about April 16, 2019, Defendants paid Plaintiff Pliego $16.00 per hour for the first 40 hours worked in a week and $22.50 per hour for the hours worked over 40 in a week.

242.    Throughout his employment, Defendants failed to pay Plaintiff Pliego spread of hours pay for each day he worked over 10 hours.

243.    Although Defendants never granted Plaintiff Pliego any breaks or meal periods of any kind, he sometimes took brief unscheduled breaks, but Defendants often interrupted such breaks.

244.    From approximately May 2017 until in or about November 2017, Defendants required Plaintiff Pliego to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

245.    On a number of occasions, Defendants required Plaintiff Pliego to sign a document, the contents of which he was not allowed to review in detail.

246.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pliego regarding overtime and wages under the FLSA and NYLL.

247.    Defendants did not provide Plaintiff Pliego with an accurate statement of wages, as required by NYLL §195(3).

248.    Defendants did not give any notice to Plaintiff Pliego, in English and in Spanish (Plaintiff Pliego's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

249.    Defendants required Plaintiff Pliego to purchase "tools of the trade" with his own funds, including one pair of kitchen shoes and a pair of pants.

*Plaintiff Hilario Barreto Garcia (a/k/a Willy)*

250.    Plaintiff Garcia was employed by Defendants from approximately January 2012 until on or about February 13, 2019.

251.    Defendants employed Plaintiff Garcia as a food preparer and ostensibly as a delivery worker.

252.    However, Plaintiff Garcia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

253.    Although Plaintiff Garcia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

254.    Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

255.    Plaintiff Garcia's work duties required neither discretion nor independent judgment.

256.    Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

257.    From approximately June 2013 until in or about December 2013, Plaintiff Garcia worked as a delivery worker at the 1217 Lexington Avenue location from approximately 10:00 a.m. until on or about 9:30 p.m., five days a week and from approximately 10:00 a.m. until on or about 6:00 p.m. one day a week (typically 65.5 hours per week).

258.    From approximately January 2014 until in or about November 2016, Plaintiff Garcia worked as a food preparer at the 1217 Lexington Avenue location from approximately 10:00 a.m. until on or about 9:30 p.m. five days a week and from approximately 10:00 a.m. until on or about 6:00 p.m. one day a week (typically 65.5 hours per week).

259.    From approximately December 2016 until in or about December 2018, Plaintiff Garcia worked as a food preparer at the 1217 Lexington Avenue location from approximately 9:00 a.m. until on or about 8:00 p.m. five days a week and from approximately 9:00 a.m. until on or about 4:00 p.m. to 6:00 p.m. one day a week (typically 62 to 64 hours per week).

260.    From approximately January 2019 until on or about February 13, 2019, Plaintiff Garcia worked as a food preparer at the 1217 Lexington Avenue location from approximately 9:00 a.m. until on or about 6:00 p.m. Tuesdays and Fridays, from approximately 11:00 a.m. until on or about 10:00 p.m. or 10:30 p.m. Wednesdays and Thursdays, and from approximately 8:00 a.m. until on or about 10:00 p.m. to 10:30 p.m. on Sundays (typically 54 to 55.5 hours per week).

261.    Throughout his employment, Defendants paid Plaintiff Garcia his wages in cash.

262.    From approximately June 2013 until in or about December 2014, Defendants paid Plaintiff Garcia a fixed salary of $380 per week.

263.    From approximately January 2015 until in or about November 2016, Defendants paid Plaintiff Garcia a fixed salary of $600 per week.

264.    In December 2016, Defendants paid Plaintiff Garcia $9.00 per hour for the first 40 hours worked in a week and $13.50 per hour for the hours worked over 40 in a week.

265.    From in or about January 2017 until in or about December 2017, Defendants paid Plaintiff Garcia $11.00 per hour for the first 40 hours worked in a week and $16.50 per hour for the hours worked over 40 in a week.

266.    From in or about January 2018 until in or about December 2018, Defendants paid Plaintiff Garcia $13.00 per hour for the first 40 hours worked in a week and $19.50 per hour for the hours worked over 40 in a week.

267.    From in or about January 2019 until on or about February 13, 2019, Defendants paid Plaintiff Garcia $15.00 per hour for the first 40 hours worked in a week and $22.50 per hour for the hours worked over 40 in a week.

268.    From approximately June 2013 until on or about February 13, 2019, Defendants failed to pay Plaintiff Garcia the spread of hours pay for each day he worked over 10 hours.

269.    From approximately June 2013 until in or about November 2016, Plaintiff Garcia's pay did not vary even when defendants required him to start earlier or work a longer day than his usual schedule.

270.    For example, from approximately June 2013 until in or about November 2016, Defendants required Plaintiff Garcia to start working one hour prior to his scheduled start time on Sundays, and did not pay him for the additional time he worked.

271.    Defendants never granted Plaintiff Garcia any breaks or meal periods of any kind.

272.    Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages.

273.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

274.    Defendants withheld a portion of Plaintiff Garcia's tips; specifically, Defendants withheld a considerable portion of the tips customers wrote in for Plaintiff Garcia when he made large deliveries.

275.    Prior to December 2016, Plaintiff Garcia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

276.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

277.    Defendants did not provide Plaintiff Garcia with an accurate statement of wages, as required by NYLL §195(3).

278.    Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Manuel Barreto Cortez*

279.    Plaintiff Cortez was employed by Defendants from approximately May 2017 until in or about September 2017 and from approximately January 2018 until in or about February 2018.

280.    Defendants ostensibly employed Plaintiff Cortez as a delivery worker.

281.    However, Plaintiff Cortez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

282.    Although Plaintiff Cortez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

283.    Plaintiff Cortez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

284.    Plaintiff Cortez's work duties required neither discretion nor independent judgment.

285.    Throughout his employment with Defendants, Plaintiff Cortez regularly worked in excess of 40 hours per week.

286.    From approximately May 2017 until in or about September 2017, Plaintiff Cortez's hours varied at the Saba's 1376 Lexington Avenue location; however, on average, he worked nine hours a day six days a week (typically 54 hours per week).

287.    From approximately January 2018 until in or about February 2018, Plaintiff Cortez worked at the 1376 Lexington Avenue location from approximately 8:00 a.m. until on or about 10:00 p.m., or 10:30 p.m. seven days a week (typically 98 to 101.5 hours per week).

288.    Throughout his employment, Defendants paid Plaintiff Cortez his wages in cash.

289.    From approximately May 2017 until in or about September 2017 and from approximately January 2018 until in or about February 2018, Defendants paid Plaintiff Cortez $7.50 per hour for the first 40 hours worked in a week and $11.50 per hour for hours worked over 40 in a week.

290.    Plaintiff Cortez was never notified by Defendants that his tips were being included as an offset for wages.

291.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cortez's wages.

292.    Defendants required Plaintiff Cortez to sign a document, the contents of which he was not allowed to review in detail in order to release his weekly pay.

293.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cortez regarding overtime and wages under the FLSA and NYLL.

294.    Defendants did not provide Plaintiff Cortez with an accurate statement of wages, as required by NYLL §195(3).

295.    Defendants did not give any notice to Plaintiff Cortez, in English and in Spanish (Plaintiff Cortez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

296.    Defendants required Plaintiff Cortez to purchase "tools of the trade" with his own funds, including two bicycles and bicycle maintenance.

*Plaintiff Juan Zeferino*

297.    Plaintiff Zeferino was employed by Defendants from approximately July 3, 2017 until on or about March 3, 2019.

298.    Defendants ostensibly employed Plaintiff Zeferino as a delivery worker.

299.    However, Plaintiff Zeferino was also required to spend a significant portion of his work day performing the non-tipped duties described above.

300.    Although Plaintiff Zeferino ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

301.    Plaintiff Zeferino regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

302.    Plaintiff Zeferino's work duties required neither discretion nor independent judgment.

303.    From approximately July 3, 2017 until in or about December 2017, Plaintiff Zeferino worked at the 1217 Lexington Avenue location from approximately 10:00 a.m. until on or about 5:00 p.m., six days a week (typically 42 hours per week).

304.    From approximately January 2018 until on or about March 3, 2019, Plaintiff Zeferino's work schedule varied every week, however, on average, he worked from approximately 9:00 a.m. until on or about 4:00 p.m. five days a week and from approximately 10:00 a.m. until on or about 10:00 p.m. one day a week (typically 47 hours per week).

305.    Throughout his employment, Defendants paid Plaintiff Zeferino his wages in cash.

306.    From approximately July 3, 2017 until on or about April 15, 2018, Defendants paid Plaintiff Zeferino $7.00 per hour for the first 40 hours worked in a week and $10.00 per hour for hours worked over 40 in a week.

307.    From approximately April 2018 until on or about March 2019, Defendants paid Plaintiff Zeferino $10.80 per hour for the first 40 hours worked in a week and $13.80 per hour for hours worked over 40 in a week.

308.    Defendants never granted Plaintiff Zeferino any breaks or meal periods of any kind.

309.    Plaintiff Zeferino was never notified by Defendants that his tips were being included as an offset for wages.

310.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Zeferino's wages.

311.    Defendants withheld a portion of Plaintiff Zeferino's tips; specifically, Defendants withheld a considerable portion of the tips customers wrote in for Plaintiff Zeferino when he made large deliveries.

312.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Zeferino regarding overtime and wages under the FLSA and NYLL.

313.    Defendants did not provide Plaintiff Zeferino with an accurate statement of wages, as required by NYLL §195(3).

314.    Defendants did not give any notice to Plaintiff Zeferino, in English and in Spanish (Plaintiff Zeferino's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

315.    Defendants required Plaintiff Zeferino to purchase "tools of the trade" with his own funds, including two bicycles, one vest per month, four helmets, and monthly bicycle maintenance.

*Plaintiff Jose Victor Garcia Castelan (a/k/a Victor Garcia)*

316.    Plaintiff Castelan was employed by Defendants from approximately March 2018 until in or about July 2018.

317.    Defendants employed Plaintiff Castelan as a cook.

318.    Plaintiff Castelan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

319.    Plaintiff Castelan's work duties required neither discretion nor independent judgment.

320.    Throughout his employment with Defendants, Plaintiff Castelan regularly worked in excess of 40 hours per week.

321.    From approximately March 2018 until on or about May 15, 2018, Plaintiff Castelan worked at the 1376 Lexington Avenue location from approximately 10:00 a.m. until on or about 10:00 p.m., three days a week, from approximately 10:00 a.m. until on or about 10:30 p.m. two days

a week and from approximately 4:00 p.m. until on or about 10:00 p.m. one day a week (typically 67 hours per week).

322.    From approximately May 16, 2018 until in or about July 2018, Plaintiff Castelan's hours varied at the First Avenue location; however, on average, he worked from approximately 9:00 a.m. until on or about 9:00 p.m. three days a week and from approximately 4:00 p.m. until on or about 10:00 p.m. three days a week (typically 54 hours per week).

323.    Throughout his employment, Defendants paid Plaintiff Castelan his wages in cash.

324.    From approximately March 2018 until on or about April 15, 2018, Defendants paid Plaintiff Castelan $14.00 per hour for the first 40 hours worked in a week and $17.00 per hour for the hours worked over 40 in a week.

325.    From approximately April 16, 2018 until in or about July 2018, Defendants paid Plaintiff Castelan $15.00 per hour for the first 40 hours worked in a week and $21.00 per hour for the hours worked over 40 in a week.

326.    Although Defendants never granted Plaintiff Castelan any breaks or meal periods of any kind, he sometimes took brief unscheduled breaks; however, Defendants often interrupted such breaks.

327.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Castelan regarding overtime and wages under the FLSA and NYLL.

328.    Defendants did not provide Plaintiff Castelan with an accurate statement of wages, as required by NYLL § 195(3).

329.    Defendants did not give any notice to Plaintiff Castelan, in English and in Spanish (Plaintiff Castelan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

330.    Defendants required Plaintiff Castelan to purchase "tools of the trade" with his own funds, including a uniform and one pair of kitchen shoes.

*Plaintiff Sergio Garcia Castelan*

331.    Plaintiff Sergio was employed by Defendants from approximately April 2018 until In or about July 2018.

332.    Defendants employed Plaintiff Sergio as a cook.

333.    Plaintiff Sergio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

334.    Plaintiff Sergio's work duties required neither discretion nor independent judgment.

335.    Throughout his employment with Defendants, Plaintiff Sergio regularly worked in excess of 40 hours per week.

336.    From approximately April 2018 until on or about May 15, 2018, Plaintiff Sergio worked at the 1376 Lexington Avenue location from approximately 10:00 a.m. until on or about 9:00 p.m. two days a week, from approximately 10:00 a.m. until on or about 9:20 p.m., two days a week and from approximately 12:00 p.m. until on or about 10:20 p.m. two days a week (typically 65.33 hours per week).

337.    From approximately May 16, 2018 until in or about July 2018, Plaintiff Sergio's hours varied at the First Avenue location; however, on average, he worked from approximately 9:00 a.m. until on or about 9:00 p.m. two days a week, from approximately 9:00 a.m. until on or about 9:20 p.m. two days a week and from approximately 4:00 p.m. until on or about 10:20 p.m. two days a week (typically 61.33 hours per week).

338.    Throughout his employment, Defendants paid Plaintiff Sergio his wages in cash.

339.    From approximately April 2018 until on or about July 2018, Defendants paid Plaintiff Sergio $15.00 per hour for the first 40 hours worked in a week and $21.00 per hour for the hours worked over 40 in a week.

340.    Although Defendants never granted Plaintiff Sergio any breaks or meal periods of any kind, he sometimes took brief unscheduled breaks; however, Defendants often interrupted such breaks.

341.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sergio regarding overtime and wages under the FLSA and NYLL.

342.    Defendants did not provide Plaintiff Sergio with an accurate statement of wages, as required by NYLL §195(3).

343.    Defendants did not give any notice to Plaintiff Sergio, in English and in Spanish (Plaintiff Sergio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

344.    Defendants required Plaintiff Sergio to purchase "tools of the trade" with his own funds, including a uniform and two pairs of kitchen shoes.

*Plaintiff Baltazar De Los Santos Hernandez*

345.    Plaintiff De Los Santos was employed by Defendants from approximately January 2019 until on or about June 2, 2019.

346.    Defendants ostensibly employed Plaintiff De Los Santos as a delivery worker.

347.    However, Plaintiff De Los Santos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

348.    Although Plaintiff De Los Santos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

349.    Plaintiff De Los Santos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

350.    Plaintiff De Los Santos's work duties required neither discretion nor independent judgment.

351.    From approximately January 2019 until on or about June 2, 2019, Plaintiff De Los Santos worked at the Amsterdam Avenue location from approximately 5:00 p.m. until on or about 10:15 p.m., four days a week and from approximately 5:00 p.m. until on or about 11:15 p.m. one day a week (typically 27.25 hours per week).

352.    Throughout his employment, Defendants paid Plaintiff De Los Santos his wages by personal check.

353.    From approximately January 2019 until on or about June 2, 2019, Defendants paid Plaintiff De Los Santos $12.50 per hour.

354.    Plaintiff De Los Santos's pay did not vary even when defendants required him to stay later or work a longer day than his usual schedule.

355.    For example, Defendants required Plaintiff De Los Santos to work an additional 15 minutes past his scheduled departure time, and did not pay him for the additional time he worked.

356.    Defendants never granted Plaintiff De Los Santos any breaks or meal periods of any kind.

357.    Plaintiff De Los Santos was never notified by Defendants that his tips were being included as an offset for wages.

358.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff De Los Santos's wages.

359.    Defendants withheld a portion of Plaintiff De Los Santos's tips.

360.    Defendants required Plaintiff De Los Santos to sign a document, the contents of which he did not review in detail, in order to release his weekly pay

361.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff De Los Santos regarding overtime and wages under the FLSA and NYLL.

362.    Defendants did not provide Plaintiff De Los Santos with an accurate statement of wages, as required by NYLL §195(3).

363.    Defendants did not give any notice to Plaintiff De Los Santos, in English and in Spanish (Plaintiff De Los Santos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

364.    Defendants required Plaintiff De Los Santos to purchase "tools of the trade" with his own funds, including one bicycle, a helmet, a vest, a set of lights, a rain coat, and a pair of pants.

*Plaintiff Eduardo De Jesus Noriega*

365.    Plaintiff De Jesus was employed by Defendants from approximately January 2, 2019 until on or about June 2, 2019.

366.    Defendants ostensibly employed Plaintiff De Jesus as a delivery worker.

367.    However, Plaintiff De Jesus was also required to spend a significant portion of his work day performing the non-tipped duties described above.

368.    Although Plaintiff De Jesus ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

369.    Plaintiff De Jesus regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

370.    Plaintiff De Jesus's work duties required neither discretion nor independent judgment.

371.    From approximately January 2, 2019 until on or about March 15, 2019, Plaintiff De Jesus worked at the Amsterdam Avenue location from approximately 5:00 p.m. until on or about 9:00 p.m. to 10:15 p.m. four days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. two days a week (typically 32 to 38 hours per week).

372.    From approximately March 16, 2019 until on or about June 2, 2019, Plaintiff De Jesus worked at the Amsterdam Avenue location from approximately 5:00 p.m. until on or about 9:00 p.m. to 10:15 p.m. three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. two days a week (typically 24 to 27.75 hours per week).

373.    Throughout his employment, Defendants paid Plaintiff De Jesus his wages by check.

374.    From approximately January 2, 2019 until on or about June 2, 2019, Defendants paid Plaintiff De Jesus $12.50 per hour.

375.    Defendants never granted Plaintiff De Jesus any breaks or meal periods of any kind.

376.    Plaintiff De Jesus was never notified by Defendants that his tips were being included as an offset for wages.

377.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff De Jesus's wages.

378.    Defendants withheld a portion of Plaintiff De Jesus's tips; specifically, on at least five occasions, Defendants withheld a portion of the tips customers wrote in for Plaintiff De Jesus.

379.    Defendants required Plaintiff De Jesus to sign a document in order to release his weekly pay.

380.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff De Jesus regarding overtime and wages under the FLSA and NYLL.

381.    Defendants did not provide Plaintiff De Jesus with an accurate statement of wages, as required by NYLL §195(3).

382.    Defendants did not give any notice to Plaintiff De Jesus, in English and in Spanish (Plaintiff De Jesus's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

383.    Defendants required Plaintiff De Jesus to purchase "tools of the trade" with his own funds, including one bicycle, a helmet, a vest, a set of lights, a chain, a rain coat, a pair of rain boots, and a pair of rain pants.

### Plaintiff Fabian De Jesus Gregorio

384.    Plaintiff Gregorio has been employed by Defendants from approximately June 2018 until at least June 7, 2019.

385.    Defendants have ostensibly employed Plaintiff Gregorio as a delivery worker.

386.    However, Plaintiff Gregorio also has been required to spend a significant portion of his work day performing the non-tipped duties described above.

387.    Although Plaintiff Gregorio ostensibly has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

388.    Plaintiff Gregorio has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

389.    Plaintiff Gregorio's work duties have required neither discretion nor independent judgment.

390.    From approximately June 2018 until on or about March 2019, Plaintiff Gregorio regularly worked in excess of 40 hours per week.

391.    From approximately June 2018 until in or about December 2018, Plaintiff Gregorio worked at the First Avenue location from approximately 4:00 p.m. until on or about 10:15 p.m. five days a week (typically 31.25 hours per week).

392.    From approximately January 2019 until in or about March 2019, Plaintiff Gregorio worked at the Amsterdam Avenue location from approximately 2:00 p.m. until on or about 10:30 p.m. five days a week (typically 42.5 hours per week).

393.    From approximately April 2019 until at least June 7, 2019, Plaintiff Gregorio has worked at the Amsterdam Avenue location from approximately 4:00 p.m. until on or about 10:15 p.m. six days a week (typically 37.5 hours per week).

394.    From approximately June 2018 until in or about December 2018, Defendants paid Plaintiff Gregorio his wages in cash.

395.    From approximately January 2019 until at least June 7, 2019, Defendants have paid Plaintiff Gregorio his wages by personal check.

396.    From approximately June 2018 until at least June 7, 2019, Defendants have paid Plaintiff Gregorio $12.50 per hour.

397.    Defendants have never granted Plaintiff Gregorio any breaks or meal periods of any kind.

398.    Plaintiff Gregorio has never been notified by Defendants that his tips are being included as an offset for wages.

399.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Gregorio's wages.

400.    Defendants have withheld a portion of Plaintiff Gregorio's tips; specifically, whenever he delivers large orders, Defendants require Plaintiff Gregorio to share a portion of the tips with pizza makers.

401.    Defendants have required Plaintiff Gregorio to sign a document in order to release his weekly pay.

402.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Gregorio regarding overtime and wages under the FLSA and NYLL.

403.    Defendants have not provided Plaintiff Gregorio with an accurate statement of wages, as required by NYLL §195(3).

404.    Defendants have not given any notice to Plaintiff Gregorio, in English and in Spanish (Plaintiff Gregorio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

405.    Defendants have required Plaintiff Gregorio to purchase "tools of the trade" with his own funds, including an electric bicycle, a helmet, and a U-lock.

*Plaintiff Honorio Candia Librado*

406.    Plaintiff Candia was employed by Defendants from approximately January 2019 until on or about June 2, 2019.

407.    Defendants ostensibly employed Plaintiff Candia as a delivery worker.

408.    However, Plaintiff Candia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

409.    Although Plaintiff Candia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

410.    Plaintiff Candia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

411.    Plaintiff Candia's work duties required neither discretion nor independent judgment.

412.    From approximately January 2, 2019 until on or about June 2, 2019, Plaintiff Candia worked at the Amsterdam Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. two days a week (typically 11 hours per week).

413.    Throughout his employment, Defendants paid Plaintiff Candia his wages by check.

414.    From approximately January 2, 2019 until on or about June 2, 2019, Defendants paid Plaintiff Candia $12.50 per hour.

415.    Defendants never granted Plaintiff Candia any breaks or meal periods of any kind.

416.    Plaintiff Candia was never notified by Defendants that his tips were being included as an offset for wages.

417.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Candia's wages.

418.    Defendants required Plaintiff Candia to sign a document in order to release his weekly wages.

419.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Candia regarding overtime and wages under the FLSA and NYLL.

420.    Defendants did not provide Plaintiff Candia with an accurate statement of wages, as required by NYLL §195(3).

421.    Defendants did not give any notice to Plaintiff Candia, in English and in Spanish (Plaintiff Candia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

422.    Defendants required Plaintiff Candia to purchase "tools of the trade" with his own funds, including two bicycles, a set of bicycle lights, a helmet, a bell, a vest, monthly bicycle maintenance, a raincoat, and a pair of rain boots.

*Plaintiff Juan Carlos Cardenas*

423.    Plaintiff Cardenas was employed by Defendants from approximately February 2019 until on or about June 17, 2019.

424.    Defendants ostensibly employed Plaintiff Cardenas as a delivery worker.

425.    However, Plaintiff Cardenas was also required to spend a significant portion of his work day performing the non-tipped duties described above.

426.    Although Plaintiff Cardenas ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

427.    Plaintiff Cardenas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

428.    Plaintiff Cardenas's work duties required neither discretion nor independent judgment.

429.    From approximately February 2019 until on or about June 17, 2019, Plaintiff Cardenas worked at the First Avenue location from approximately 9:00 a.m. until on or about 3:30 p.m., Thursdays, Fridays and Mondays, from approximately 9:00 a.m. until on or about 4:00 p.m. on Saturdays and Sundays and from approximately 11:00 a.m. until on or about 4:00 p.m. on Tuesdays (typically 38.5 hours per week).

430.    From approximately February 2019 until in or about March 2019, Defendants paid Plaintiff Cardenas his wages by personal check.

431.    From approximately April 2019 until on or about June 17, 2019, defendants paid Plaintiff Cardenas his wages by check.

432.    From approximately February 2019 until on or about June 17, 2019, Defendants paid Plaintiff Cardenas $12.50 per hour.

433.    Although Plaintiff Cardenas took 15-minute meal breaks, Defendants constantly interrupted these breaks by requiring Plaintiff Cardenas to make deliveries.

434.    Plaintiff Cardenas was never notified by Defendants that his tips were being included as an offset for wages.

435.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cardenas's wages.

436.    On a number of occasions, Defendants required Plaintiff Cardenas to sign a document, the contents of which he did not review in detail.

437.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cardenas regarding overtime and wages under the FLSA and NYLL.

438.    Defendants did not provide Plaintiff Cardenas with an accurate statement of wages, as required by NYLL §195(3).

439.    Defendants did not give any notice to Plaintiff Cardenas, in English and in Spanish (Plaintiff Cardenas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

440.    Defendants required Plaintiff Cardenas to purchase "tools of the trade" with his own funds, including one bicycle and a box holder for the bicycle.

*Plaintiff Marcelino Cruz*

441.    Plaintiff Cruz was employed by Defendants from approximately January 2019 until on or about June 15, 2019.

442.    Defendants ostensibly employed Plaintiff Cruz as a delivery worker.

443.    However, Plaintiff Cruz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

444.    Although Plaintiff Cruz ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

445.    Plaintiff Cruz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

446.    Plaintiff Cruz's work duties required neither discretion nor independent judgment.

447.    From approximately January 2019 until on or about June 15, 2019, Plaintiff Cruz worked at the First Avenue location from approximately 11:00 a.m. until on or about 4:00 p.m. Mondays and Thursdays, from approximately 9:00 a.m. until on or about 3:30 p.m. on Tuesdays, from approximately 10:00 a.m. until on or about 4:00 p.m. on Wednesdays and Saturdays and from approximately 10:00 a.m. until on or about 3:30 p.m. on Fridays (typically 34 hours per week).

448.    From approximately January 2019 until in or about February 2019, Defendants paid Plaintiff Cruz his wages in cash.

449.    During the month of March 2019, Defendants paid Plaintiff Cruz his wages by personal check.

450.    From approximately April 2019 until on or about June 15, 2019, Defendants paid Plaintiff Cruz his wages by check.

451.    From approximately January 2019 until on or about June 15, 2019, Defendants paid Plaintiff Cruz $12.50 per hour.

452.    Although Plaintiff Cruz took 15-minute meal breaks, Defendants constantly interrupted these breaks by requiring Plaintiff Cruz to make deliveries.

453.    Plaintiff Cruz was never notified by Defendants that his tips were being included as an offset for wages.

454.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cruz's wages.

455.    On a number of occasions, Defendants required Plaintiff Cruz to sign a document to release his payment, the contents of which he was not allowed to review in detail.

456.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cruz regarding overtime and wages under the FLSA and NYLL.

457.    Defendants did not provide Plaintiff Cruz with an accurate statement of wages, as required by NYLL §195(3).

458.    Defendants did not give any notice to Plaintiff Cruz, in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

459.    Defendants required Plaintiff Cruz to purchase "tools of the trade" with his own funds, including one bicycle and bicycle maintenance.

*Plaintiff Melvin Ramirez*

460.    Plaintiff Ramirez was employed by Defendants from approximately May 2018 until on or about June 10, 2019.

461.    Defendants ostensibly employed Plaintiff Ramirez as a delivery worker.

462.    However, Plaintiff Ramirez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

463.    Although Plaintiff Ramirez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

464.    Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

465.    Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

466.    From approximately May 2018 until on or about October 15, 2018, Plaintiff Ramirez's schedule varied every week at the 1217 Lexington Avenue location; however, he worked an average of 35 to 38 hours per week, five days a week.

467.    From approximately October 16, 2018 until on or about June 10, 2019, Plaintiff Ramirez worked at the 1217 Lexington Avenue location from approximately 10:00 a.m. until on or about 5:00 p.m. to 5:30 p.m. five days a week (typically 35 to 37.5 hours per week).

468.    Throughout his employment, Defendants paid Plaintiff Ramirez his wages by personal check.

469.    From approximately May 2018 until on or about June 10, 2019, Defendants paid Plaintiff Ramirez $11.00 per hour.

470.    Defendants never granted Plaintiff Ramirez any breaks or meal periods of any kind.

471.    Plaintiff Ramirez was never notified by Defendants that his tips were being included as an offset for wages.

472.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

473.    Defendants withheld a portion of the tips that customers wrote in for Plaintiff Ramirez.

474.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

475.    Defendants did not provide Plaintiff Ramirez with an accurate statement of wages, as required by NYLL §195(3).

476.    Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

477.    Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds, including an electric bicycle, a battery, a helmet, a vest, and bicycle maintenance.

### Plaintiff Milan Flores Heladio

478.    Plaintiff Heladio was employed by Defendants from approximately January 2019 until on or about June 2, 2019.

479.    Defendants ostensibly employed Plaintiff Heladio as a delivery worker.

480.    However, Plaintiff Heladio was also required to spend a significant portion of his work day performing the non-tipped duties described above.

481.    Although Plaintiff Heladio ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

482.    Plaintiff Heladio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

483.    Plaintiff Heladio's work duties required neither discretion nor independent judgment.

484.    From approximately January 2019 until on or about March 15, 2019, Plaintiff Heladio worked at the Amsterdam Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m. three days a week and from approximately 5:00 p.m. until on or about 1:00 a.m. two days a week (typically 34 hours per week).

485.    From approximately March 16, 2019 until on or about June 2, 2019, Plaintiff Heladio worked at the Amsterdam Avenue location from approximately 5:00 p.m. until on or about 10:00 p.m. or 10:30 p.m. three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. two days a week (typically 27 to 28.5 hours per week).

486.    Throughout his employment, Defendants paid Plaintiff Heladio his wages by check.

487.    From approximately January 2019 until on or about June 2, 2019, Defendants paid Plaintiff Heladio $12.50 per hour.

488.    From approximately May 31, 2019 until on or about June 2, 2019, Defendants did not pay Plaintiff Heladio any wages for his work.

489.    Defendants never granted Plaintiff Heladio any breaks or meal periods of any kind.

490.    Plaintiff Heladio was never notified by Defendants that his tips were being included as an offset for wages.

491.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Heladio's wages.

492.    Defendants required Plaintiff Heladio to sign a document in order to release his pay, but he did not understand its contents because it was not written in Spanish, Mr. Heladio's primary language.

493.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Heladio regarding overtime and wages under the FLSA and NYLL.

494.    Defendants did not provide Plaintiff Heladio with an accurate statement of wages, as required by NYLL §195(3).

495.    Defendants did not give any notice to Plaintiff Heladio, in English and in Spanish (Plaintiff Heladio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

496.    Defendants required Plaintiff Heladio to purchase "tools of the trade" with his own funds, including a bicycle, a helmet, a pair of rain boots, a rain coat, a vest, and a set of bicycle lights.

*Plaintiff Raul Villegas Peralta*

497.    Plaintiff Villegas was employed by Defendants from approximately February 2019 until in or about May 2019.

498.    Defendants ostensibly employed Plaintiff Villegas as a delivery worker.

499.    However, Plaintiff Villegas was also required to spend a significant portion of his work day performing the non-tipped duties described above.

500.    Although Plaintiff Villegas ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

501.    Plaintiff Villegas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

502.    Plaintiff Villegas's work duties required neither discretion nor independent judgment.

503.    From approximately February 2019 until in or about March 2019, Plaintiff Villegas worked at the Amsterdam Avenue location from approximately 10:00 a.m. until on or about 2:00

p.m. three days a week and from approximately 10:00 a.m. until on or about 3:00 p.m. two days a week (typically 22 hours per week).

504.    From approximately April 2019 until in or about May 2019, Plaintiff Villegas worked at the Amsterdam Avenue location from approximately 7:00 a.m. until on or about 2:00 p.m. three days a week and from approximately 7:00 a.m. until on or about 3:00 p.m. two days a week (typically 37 hours per week).

505.    Throughout his employment, Defendants paid Plaintiff Villegas his wages by check.

506.    From approximately February 2019 until in or about May 2019, Defendants paid Plaintiff Villegas $12.50 per hour.

507.    Defendants never granted Plaintiff Villegas any breaks or meal periods of any kind.

508.    Plaintiff Villegas was never notified by Defendants that his tips were being included as an offset for wages.

509.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Villegas's wages.

510.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Villegas regarding overtime and wages under the FLSA and NYLL.

511.    Defendants did not provide Plaintiff Villegas with an accurate statement of wages, as required by NYLL §195(3).

512.    Defendants did not give any notice to Plaintiff Villegas, in English and in Spanish (Plaintiff Villegas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

513.    Defendants required Plaintiff Villegas to purchase "tools of the trade" with his own funds, including a bicycle, one helmet, a chain, a rain coat, a pair of rain boots, and a set of bicycle lights.

*Plaintiff Antonio Lopez*

514.    Plaintiff Lopez was employed by Defendants from approximately June 2018 until on or about June 17, 2019.

515.    Defendants ostensibly employed Plaintiff Lopez as a delivery worker.

516.    However, Plaintiff Lopez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

517.    Although Plaintiff Lopez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

518.    Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

519.    Plaintiff Lopez's work duties required neither discretion nor independent judgment.

520.    From approximately September 16, 2018 until on or about January 15, 2019, Plaintiff Lopez regularly worked in excess of 40 hours per week.

521.    From approximately June 2018 until on or about September 15, 2018, Plaintiff Lopez worked at the 1376 Lexington Avenue location from approximately 4:00 p.m. until on or about 10:30 p.m., six days a week (typically 39 hours per week).

522.    From approximately September 16, 2018 until on or about January 15, 2019, Plaintiff Lopez's hours varied at the 1376 Lexington Avenue location, however, on average, he worked 48 hours per week for six days per week.

523.    From approximately January 16, 2019 until on or about June 17, 2019, Plaintiff Lopez worked at the 1376 Lexington Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. six days a week (typically 33 hours per week).

524.    From approximately June 2018 until in or about January 2019, Defendants paid Plaintiff Lopez his wages in cash.

525.    From approximately February 2019 until on or about June 17, 2019, Defendants paid Plaintiff Lopez his wages by personal check.

526.    From approximately June 2018 until in or about December 2018, Defendants paid Plaintiff Lopez $10.85 per hour for the first 40 hours worked per week and $16.28 per hour for the hours worked over 40 per week.

527.    From approximately January 2019 until on or about June 17, 2019, Defendants paid Plaintiff Lopez $12.50 per hour for the first 40 hours worked in a week and $18.75 per hour for the hours worked over 40 in a week.

528.    Defendants never granted Plaintiff Lopez any breaks or meal periods of any kind.

529.    Plaintiff Lopez was never notified by Defendants that his tips were being included as an offset for wages.

530.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lopez's wages.

531.    Defendants withheld a portion of Plaintiff Lopez's tips; specifically, Defendants withheld at least half of the tips customers wrote in for Plaintiff Lopez when he made large deliveries.

532.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

533.    Defendants did not provide Plaintiff Lopez with an accurate statement of wages, as required by NYLL §195(3).

534.    Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

535.    Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds, including bicycle maintenance.

*Plaintiff Juan Pablo Barreto Anzures*

536.    Plaintiff Anzures was employed by Defendants from approximately June 14, 2018 until on or about June 22, 2019.

537.    Defendants ostensibly employed Plaintiff Anzures as a delivery worker.

538.    However, Plaintiff Anzures was also required to spend a significant portion of his work day performing the non-tipped duties described above.

539.    Although Plaintiff Anzures ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

540.    Plaintiff Anzures regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

541.    Plaintiff Anzures's work duties required neither discretion nor independent judgment.

542.    From approximately June 14, 2018 until on or about June 22, 2019, Plaintiff Anzures worked 25 to 55 hours per week at the 1376 Lexington Avenue location.

543.    From approximately June 14, 2018 until in or about March 2019, Defendants paid Plaintiff Anzures his wages in cash.

544.    From approximately April 2019 until on or about June 17, 2019, Defendants paid Plaintiff Anzures his wages by personal check.

545.    From approximately June 14, 2018 until on or about January 15, 2019, Defendants paid Plaintiff Anzures $10.50 per hour for the first 40 hours worked per week and $17.50 per hour for the hours worked over 40 per week.

546.    From approximately January 16, 2019 until on or about June 22, 2019, Defendants paid Plaintiff Anzures $12.50 per hour for the first 40 hours worked per week and an overtime rate of $17.50 per hour for the hours worked over 40 per week.

547.    Defendants never granted Plaintiff Anzures any breaks or meal periods of any kind.

548.    Defendants required Plaintiff Anzures to sign a document, the contents of which he did not understand, in order to release his weekly pay.

549.    On a number of occasions, Defendants required Plaintiff Anzures to sign a document, the contents of which he did not understand.

550.    Plaintiff Anzures was never notified by Defendants that his tips were being included as an offset for wages.

551.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Anzures's wages.

552.    Defendants withheld a portion of Plaintiff Anzures's tips; specifically, Defendants withheld 50% of the tips customers wrote in for Plaintiff Anzures when he made large deliveries.

553.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Anzures regarding overtime and wages under the FLSA and NYLL.

554.    Defendants did not provide Plaintiff Anzures with an accurate statement of wages, as required by NYLL §195(3).

555. Defendants did not give any notice to Plaintiff Anzures, in English and in Spanish (Plaintiff Anzures's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

556. Defendants required Plaintiff Anzures to purchase "tools of the trade" with his own funds, including two bicycles, a helmet, a basket for the bicycle, three rain coats, bicycle wheels, and a battery for the bicycle.

*Plaintiff Octavio Peralta Marcelo*

557. Plaintiff Peralta was employed by Defendants from approximately August 2018 until on or about June 17, 2019.

558. Defendants ostensibly employed Plaintiff Peralta as a delivery worker.

559. However, Plaintiff Peralta was also required to spend a significant portion of his work day performing the non-tipped duties described above.

560. Although Plaintiff Peralta ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

561. Plaintiff Peralta regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

562. Plaintiff Peralta's work duties required neither discretion nor independent judgment.

563. From approximately August 2018 until in or about September 2018, Plaintiff Peralta worked at the First Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m. on Mondays, from approximately 4:00 p.m. until on or about 11:00 p.m., on Tuesdays, from approximately 10:00 a.m. until on or about 4:00 p.m. on Thursdays, from approximately 4:15 p.m. until on or about 10:30 p.m. to 11:00 p.m. on Fridays, and from approximately 3:15 p.m. until on or about 10:30 p.m. to 11:00 p.m. on Sundays (typically 32.5 to 33.5 hours per week).

564.    From approximately October 2018 until on or about June 17, 2019, Plaintiff Peralta worked at the 1376 Lexington Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m. Sundays, Mondays and Fridays, from approximately 4:00 p.m. until on or about 10:30 p.m. to 11:00 p.m. on Tuesdays, and from approximately 10:00 a.m. until on or about 4:00 p.m. on Thursdays (typically 30.5 to 31 hours per week).

565.    From approximately August 2018 until in or about December 2018, Defendants paid Plaintiff Peralta his wages in cash.

566.    From approximately January 2019 until on or about June 17, 2019, Defendants paid Plaintiff Peralta his wages by check.

567.    From approximately August 2018 until in or about December 2018, Defendants paid Plaintiff Peralta $11.25 per hour.

568.    From approximately January 2019 until on or about June 17, 2019, Defendants paid Plaintiff Peralta $12.50 per hour.

569.    Within the time period of approximately January 2019 until on or about June 17, 2019, Defendants did not pay Plaintiff Peralta any wages for two days of work.

570.    Defendants never granted Plaintiff Peralta any breaks or meal periods of any kind.

571.    Plaintiff Peralta was never notified by Defendants that his tips were being included as an offset for wages.

572.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Peralta's wages.

573.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Peralta regarding overtime and wages under the FLSA and NYLL.

574.    Defendants did not provide Plaintiff Peralta with an accurate statement of wages, as required by NYLL §195(3).

575.    Defendants did not give any notice to Plaintiff Peralta, in English and in Spanish (Plaintiff Peralta's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

576.    Defendants required Plaintiff Peralta to purchase "tools of the trade" with his own funds, including one bicycle, a bicycle chain, and a helmet.

*Plaintiff Wilmer Baten*

577.    Plaintiff Baten was employed by Defendants from approximately June 2018 until on or about June 16, 2019.

578.    Defendants ostensibly employed Plaintiff Baten as a delivery worker.

579.    However, Plaintiff Baten was also required to spend a significant portion of his work day performing the non-tipped duties described above.

580.    Although Plaintiff Baten ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

581.    Plaintiff Baten regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

582.    Plaintiff Baten's work duties required neither discretion nor independent judgment.

583.    From approximately June 2018 until on or about September 15, 2018, Plaintiff Baten worked at the 1376 Lexington Avenue location from approximately 4:00 p.m. until on or about 10:00 p.m. Tuesdays & Wednesdays, from approximately 10:00 a.m. until on or about 3:00 p.m. on Thursdays, from approximately 10:00 a.m. until on or about 9:00 p.m. on Fridays, from

approximately 5:00 p.m. until on or about  10:00 p.m. on Saturdays and from approximately 10:00 a.m. until on or about 3:00 p.m. on Sundays (typically 38 hours per week).

584.    From approximately September 16, 2018 until in or about December 2018, Plaintiff Baten worked at the 1376 Lexington Avenue location from approximately 4:00 p.m. until on or about 10:00 p.m. two days a week, from approximately 10:00 a.m. until on or about 9:00 p.m. two days a week, from approximately 11:00 a.m. until on or about 10:00 p.m. one day a week, and from approximately 10:00 a.m. until on or about 4:00 p.m. one day a week (typically 51 hours per week).

585.    From approximately January 2019 until on or about May 15, 2019, Plaintiff Baten worked at the 1376 Lexington Avenue location from approximately 4:00 p.m. until on or about 9:00 p.m. two days a week, from approximately 10:00 a.m. until on or about 4:00 p.m. one day a week, from approximately 10:00 a.m. until on or about 9:00 p.m. one day a week, from approximately 5:00 p.m. until on or about 10:00 p.m. one day a week, and from approximately 11:00 a.m. until on or about 8:00 p.m. one day a week (typically 41 hours per week).

586.    From approximately May 16, 2019 until on or about June 16, 2019, Plaintiff Baten worked at the 1376 Lexington Avenue location from approximately 5:00 p.m. until on or about 10:00 p.m. two days a week, from approximately 10:00 a.m. until on or about 4:00 p.m. one day a week, from approximately 10:00 a.m. until on or about 9:00 p.m. one day a week, and from approximately 11:00 a.m. until on or about 8:00 p.m. one day a week (typically 36 hours per week).

587.    From approximately June 2018 until in or about March 2019, Defendants paid Plaintiff Baten his wages in cash.

588.    From approximately April 2019 until on or about June 16, 2019, Defendants paid Plaintiff Baten his wages by personal check.

589.    From approximately June 2018 until in or about December 2018, Defendants paid Plaintiff Baten $11.50 per hour; in addition, from approximately September 16, 2018 until in or about December 2018, Defendants paid Plaintiff Baten approximately $18.00 per hour for his overtime hours.

590.    From approximately January 2019 until on or about June 16, 2019, Defendants paid Plaintiff Baten $12.50 per hour.

591.    Plaintiff Baten was never notified by Defendants that his tips were being included as an offset for wages.

592.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Baten's wages.

593.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Baten regarding overtime and wages under the FLSA and NYLL.

594.    Defendants did not provide Plaintiff Baten with an accurate statement of wages, as required by NYLL §195(3).

595.    Defendants did not give any notice to Plaintiff Baten, in English and in Spanish (Plaintiff Baten's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

596.    Defendants required Plaintiff Baten to purchase "tools of the trade" with his own funds, including a bicycle, a helmet, a rain coat, a bicycle chain, and bicycle brakes.

*Plaintiff Sixto Vicente*

597.    Plaintiff Vicente was employed by Defendants from approximately August 2017 until on or about June 17, 2019.

598.    Defendants ostensibly employed Plaintiff Vicente as a delivery worker.

599. However, Plaintiff Vicente was also required to spend a significant portion of his work day performing the non-tipped duties described above.

600. Although Plaintiff Vicente ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

601. Plaintiff Vicente regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

602. Plaintiff Vicente's work duties required neither discretion nor independent judgment.

603. From approximately August 2017 until on or about June 15, 2018, Plaintiff Vicente worked at the 1376 Lexington Avenue location from approximately 4:00 p.m. until on or about 10:30 p.m. to 11:00 p.m. six days a week (typically 39 to 42 hours per week).

604. From approximately June 16, 2018 until on or about March 15, 2019, Plaintiff Vicente worked at the First Avenue location from approximately 4:00 p.m. until on or about 10:00 p.m. to 10:30 p.m. two days a week and from approximately 4:00 p.m. until on or about 9:00 p.m. four days a week (typically 32 to 33 hours per week).

605. From approximately March 16, 2019 until on or about June 17, 2019, Plaintiff Vicente worked at the First Avenue location from approximately 4:00 p.m. until on or about 9:20 p.m. five days a week (typically 26.67 hours per week).

606. From approximately August 2017 until in or about October 2018, Defendants paid Plaintiff Vicente his wages by cash.

607. From approximately November 2018 until on or about June 17, 2019, Defendants paid Plaintiff Vicente his wages by personal check.

608. From approximately August 2017 until in or about December 2017, Defendants paid Plaintiff Vicente $8.50 per hour.

609.    From approximately January 2018 until in or about December 2018, Defendants paid Plaintiff Vicente $10.50 per hour.

610.    From approximately January 2019 until on or about June 17, 2019, Defendants paid Plaintiff Vicente $12.50 per hour.

611.    Defendants never granted Plaintiff Vicente any breaks or meal periods of any kind.

612.    Plaintiff Vicente was never notified by Defendants that his tips were being included as an offset for wages.

613.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vicente's wages.

614.    Starting in January 2019, Defendants withheld 50% of the tips customers wrote in for Plaintiff Vicente when he made large deliveries.

615.    In addition, on three occasions, Defendants withheld all the tips customers wrote in for Plaintiff Vicente for large deliveries.

616.    Defendants required Plaintiff Vicente to sign a document, the contents of which he did not review in detail, in order to release his weekly pay.

617.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vicente regarding overtime and wages under the FLSA and NYLL.

618.    Defendants did not provide Plaintiff Vicente with an accurate statement of wages, as required by NYLL §195(3).

619.    Defendants did not give any notice to Plaintiff Vicente, in English and in Spanish (Plaintiff Vicente's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

620. Defendants required Plaintiff Vicente to purchase "tools of the trade" with his own funds, including three bicycles, two helmets, three bells, a basket for his bicycle, and monthly bicycle maintenance.

*Plaintiff Elicias Lorenzo Mejia Sapon*

621. Plaintiff Mejia was employed by Defendants from approximately December 4, 2018 until on or about May 28, 2019.

622. Defendants ostensibly employed Plaintiff Mejia as a delivery worker.

623. However, Plaintiff Mejia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

624. Although Plaintiff Mejia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

625. Plaintiff Mejia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

626. Plaintiff Mejia's work duties required neither discretion nor independent judgment.

627. From approximately December 4, 2018 until in or about March 2019, Plaintiff Mejia worked at the First Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. six days a week (typically 33 hours per week).

628. From approximately April 2019 until on or about May 28, 2019, Plaintiff Mejia worked at the First Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. three days a week (typically 16.5 hours per week).

629. From approximately December 4, 2018 until in or about February 2019, Defendants paid Plaintiff Mejia his wages in cash.

630.    From approximately March 2019 until on or about May 28, 2019, Defendants paid Plaintiff Mejia his wages by personal check.

631.    From approximately December 4, 2018 until on or about May 28, 2019, Defendants paid Plaintiff Mejia $12.50 per hour.

632.    Defendants never granted Plaintiff Mejia any breaks or meal periods of any kind.

633.    Plaintiff Mejia was never notified by Defendants that his tips were being included as an offset for wages.

634.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mejia's wages.

635.    Defendants required Plaintiff Mejia to sign a document in order to release his weekly pay but he did not understand its contents because it was not written in Spanish, Mr. Meija's primary language.

636.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

637.    Defendants did not provide Plaintiff Mejia with an accurate statement of wages, as required by NYLL §195(3).

638.    Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

639.    Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds, including one bicycle, a bicycle basket, and bicycle maintenance.

*Plaintiff Jilmar Ramirez (a/k/a Jose Perez)*

640.    Plaintiff Jilmar was employed by Defendants from approximately February 2019

until on or about June 17, 2019.

641.    Defendants ostensibly employed Plaintiff Jilmar as a delivery worker.

642.    However, Plaintiff Jilmar was also required to spend a significant portion of his work day performing the non-tipped duties described above.

643.    Although Plaintiff Jilmar ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

644.    Plaintiff Jilmar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

645.    Plaintiff Jilmar's work duties required neither discretion nor independent judgment.

646.    In February 2019, Plaintiff Jilmar worked at the First Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. seven days a week (typically 38.5 hours per week).

647.    In March 2019, Plaintiff Jilmar worked at the First Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. six days a week (typically 33 hours per week).

648.    From approximately April 2019 until on or about June 17, 2019, Plaintiff Jilmar worked at the First Avenue location from approximately 5:00 p.m. until on or about 10:30 p.m. Tuesdays through Thursdays, Saturdays, and Sundays (typically 27.5 hours per week).

649.    In February 2019, Defendants paid Plaintiff Jilmar his wages in cash.

650.    In March 2019, Defendants paid Plaintiff Jilmar his wages by personal check.

651.    From approximately April 2019 until on or about June 17, 2019, Defendants paid Plaintiff Jilmar his wages by check.

652.    From approximately February 2019 until on or about June 17, 2019, Defendants paid Plaintiff Jilmar $12.50 per hour.

653.    Defendants never granted Plaintiff Jilmar any breaks or meal periods of any kind.

654.    Plaintiff Jilmar was never notified by Defendants that his tips were being included as an offset for wages.

655.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Jilmar's wages.

656.    Defendants required Plaintiff Jilmar to sign a document in order to release his weekly pay but he did not understand its contents because it was not written in Spanish, Mr. Jilmar's primary language.

657.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jilmar regarding overtime and wages under the FLSA and NYLL.

658.    Defendants did not provide Plaintiff Jilmar with an accurate statement of wages, as required by NYLL §195(3).

659.    Defendants did not give any notice to Plaintiff Jilmar, in English and in Spanish (Plaintiff Jilmar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

660.    Defendants required Plaintiff Jilmar to purchase "tools of the trade" with his own funds, including one bicycle, two bicycle lights, and one U-lock.

*Plaintiff Rafael Valencia Ortega*

661.    Plaintiff Valencia was employed by Defendants from approximately June 2017 until on or about June 2018.

662.    Defendants employed Plaintiff Valencia as a cook.

663.    Plaintiff Valencia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

664.    Plaintiff Valencia's work duties required neither discretion nor independent judgment.

665.    Throughout his employment with Defendants, Plaintiff Valencia regularly worked in excess of 40 hours per week.

666.    From approximately June 2017 until in or about January 2018, Plaintiff Valencia worked at the 1376 Lexington Avenue location from approximately 10:00 a.m. until on or about 9:00 p.m., six days a week (typically 66 hours per week).

667.    From approximately February 2018 until in or about April 2018, Plaintiff Valencia worked from approximately 2:00 p.m. until on or about 10:00 p.m. one day a week, from approximately 6:00 a.m. until on or about 2:00 p.m. to 4:00 p.m. one day a week, and from approximately 10:00 a.m. until on or about 9:00 p.m. four days a week (typically 60 to 62 hours per week).  Plaintiff Valencia worked two days a week at the First Avenue location and four days a week at the 1376 Lexington Avenue location.

668.    From approximately May 2018 until in or about June 2018, Plaintiff Valencia worked at the 1376 Lexington Avenue location from approximately 6:00 a.m. until on or about 3:00 p.m., six days a week (typically 54 hours per week).

669.    Throughout his employment, Defendants paid Plaintiff Valencia his wages in cash.

670.    From approximately June 2017 until in or about July 2017, Defendants paid Plaintiff Valencia $11.00 per hour.

671.    From approximately August 2017 until in or about December 2017, Defendants paid Plaintiff Valencia $12.00 per hour.

672.    From approximately January 2018 until in or about June 2018, Defendants paid Plaintiff Valencia $13.00 per hour.

673.    Although Defendants granted Plaintiff Valencia a meal break, defendants often interrupted such breaks.

674.    Defendants required Plaintiff Valencia to sign a document in order to release his weekly pay.

675.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Valencia regarding overtime and wages under the FLSA and NYLL.

676.    Defendants did not provide Plaintiff Valencia with an accurate statement of wages, as required by NYLL §195(3).

677.    Defendants did not give any notice to Plaintiff Valencia, in English and in Spanish (Plaintiff Valencia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

678.    Defendants required Plaintiff Valencia to purchase "tools of the trade" with his own funds, including cutlery and kitchen tools.

*Plaintiff Juan Jose Cruz Garcia*

679.    Plaintiff Cruz Garcia was employed by Defendants from approximately November 2017 until on or about August 28, 2020.

680.    Defendants employed Plaintiff Cruz Garcia as a cook.

681.    Plaintiff Cruz Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

682.    Plaintiff Cruz Garcia's work duties required neither discretion nor independent judgment.

683.    Throughout his employment with Defendants, Plaintiff Cruz Garcia regularly worked in excess of 40 hours per week.

684.    From approximately November 2017 until on or about June 15, 2018, Plaintiff Cruz Garcia worked at the Amsterdam Avenue location from approximately 10:00 a.m. until on or about 9:00 p.m., six days a week (typically 66 hours per week).

685.    From approximately June 16, 2018 until on or about August 28, 2020, Plaintiff Cruz Garcia worked from approximately 10:00 a.m. until on or about 9:00 p.m. four days a week (typically 44 hours per week).

686.    From approximately November 2017 until in or about June 2018, Defendants paid Plaintiff Cruz Garcia his wages in cash.

687.    From approximately July 2018 until on or about August 28, 2020, Defendants paid Plaintiff Cruz Garcia his wages by check

688.    From approximately November 2017 until in or about December 2017, Defendants paid Plaintiff Cruz Garcia $15.00 per hour.

689.    From approximately January 2018 until on or about August 28, 2020, Defendants paid Plaintiff Cruz Garcia $18.00 per hour.

690.    For one week, Defendants did not pay Plaintiff Cruz Garcia any wages.

691.    Defendants never granted Plaintiff Cruz Garcia any breaks or meal periods of any kind.

692.    Defendants required Plaintiff Cruz Garcia to sign a document but he did not understand its contents because it was not written in Spanish, Mr. Cruz Garcia's primary language.

693.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cruz Garcia regarding overtime and wages under the FLSA and NYLL.

694.    Defendants did not provide Plaintiff Cruz Garcia with an accurate statement of wages, as required by NYLL §195(3).

695.    Defendants did not give any notice to Plaintiff Cruz Garcia, in English and in Spanish (Plaintiff Cruz Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

696.    Defendants required Plaintiff Cruz Garcia to purchase "tools of the trade" with his own funds, including shoes and pants.

*Defendants' General Employment Practices*

697.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

698.    Plaintiffs and all similarly situated employees have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they are owed for the hours they have worked.

699.    Defendants' pay practices have resulted in some Plaintiffs and similarly situated employees not receiving payment for all their hours worked, and has resulted in these Plaintiffs and similarly situated employees' effective rate of pay falling below the required minimum wage rate.

700.    Defendants habitually have required some Plaintiffs and all similarly situated employees to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

701.    Defendants have required Plaintiffs and all similarly situated employees who have worked as delivery workers and all other workers holding the same jobs to perform general non-tipped tasks in addition to their primary duties as delivery workers.

702.    These Plaintiffs and similarly situated employees ostensibly have been employed as tipped employees by Defendants, although their actual duties have included a significant amount of time spent performing the non-tipped duties outlined above.

703.    These Plaintiffs and similarly situated employees' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general restaurant duties, including the non-tipped duties described above.

704.    These Plaintiffs and similarly situated employees have been paid at a rate that is equal to or lower than the required lower tip-credit rate by Defendants.

705.    However, under state law, Defendants have not been entitled to a tip credit because these Plaintiffs and similarly situated employees' non-tipped duties have exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 NYCCR § 146).

706.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 NYCRR §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

707.    In violation of federal and state law as codified above, Defendants have classified Plaintiffs whom were delivery workers, and other similarly situated employees, as tipped employees, and have paid them at a rate that is equal to or lower than the required lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

708.    Defendants have failed to inform Plaintiffs and all similarly situated employees who received tips that Defendants intended to take a deduction against Plaintiffs and all similarly situated

employees' earned wages for tip income, as required by the NYLL, before any deduction may be taken.

709.    Defendants have failed to inform Plaintiffs and all similarly situated employees who receive tips that their tips were being credited towards the payment of the minimum wage.

710.    Defendants have failed to maintain a record of tips earned by Plaintiffs and all similarly situated employees who have worked as delivery workers for the tips they have received.

711.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly have harmed Plaintiffs and all similarly situated employees who receive tips by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice has included depriving some delivery workers of a portion of the tips earned during the course of employment.

712.    Defendants unlawfully have misappropriated charges purported to be gratuities received by several tipped Plaintiffs and other similarly situated employees, in violation of NYLL § 196-d (2007).

713.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit, or pay them the full hourly minimum wage.

714.    On a number of occasions, Defendants required Plaintiffs and all similarly situated employees to sign a document the contents of which they were not allowed to review in detail.

715.    In some of the locations in which Plaintiffs and all similarly situated employees worked, Defendants' time-keeping system does not reflect the actual hours that Plaintiffs and all similarly situated employees worked.

716.    During certain periods of time, Defendants have paid Plaintiffs and all similarly situated employees their wages in cash, by personal check, or a combination of cash and check.

717.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

718.    Upon information and belief, these practices by Defendants are done willfully to disguise the actual number of hours that Plaintiffs and all similarly situated employees have worked, and to avoid paying them properly for their full hours worked.

719.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

720.    Defendants' unlawful conduct is intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and all other similarly situated employees.

721.    Defendants have failed to provide Plaintiffs and all similarly situated employees with accurate wage statements at the time of their payment of wages, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

722.    Defendants have failed to provide Plaintiffs and all similarly situated employees at the time of hiring, a statement in English and the employees' primary language, containing: the rate

or rates of pay and the basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

723.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section §16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

724.    At all relevant times, Plaintiffs and other members of the FLSA Class have been similarly situated in that they have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans, including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

725.    The claims of Plaintiffs stated herein are similar to those of the other employees.

726.    The named Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. §216(b).

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

727.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

728.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case to the entry of judgment (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

729.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

730.    There are questions of law and fact common to the Class including:

   a)   What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

   b)   What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

   c)   What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

   d)   Whether Defendants failed and/or refused to pay the class members minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

   e)   Whether Defendants failed and/or refused to pay the class members "Spread of Hours" Pay;

   f)   Whether Defendants improperly deducted "shorts" from the class members' wages;

g)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)  What are the common conditions of employment in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

731.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols, and plans alleged herein concerning non-payment of overtime, non-payment of wages, and the failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

732.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

733.    The common questions of law and fact predominate over questions affecting only individual members.

734.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

735.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

736.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

737.    At all times relevant to this action, Defendants have been Plaintiffs and the FLSA and Rule 23 class members' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have the power to hire and fire Plaintiffs and the FLSA and Rule 23 class members, have controlled the terms and conditions of their employment, and have determined the rate and method of any compensation in exchange for their employment.

738.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

739.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

740.    Defendants have failed to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

741.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

742.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

743.     Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

744.     Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs and the FLSA and Rule 23 class members overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

745.     Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

746.     Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

747.     Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

748.     At all times relevant to this action, Defendants have been Plaintiffs and the FLSA and Rule 23 class members' employers within the meaning of NYLL §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs and the FLSA and Rule 23 class members, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

749.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs and the FLSA and Rule 23 class members less than the minimum wage.

750.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members the minimum wage is willful within the meaning of NYLL § 663.

751.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

752.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

753.    Defendants, in violation of NYLL § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs and the FLSA and Rule 23 class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

754.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members overtime compensation is willful within the meaning of NYLL § 663.

755.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

756.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

- 85 -

757.    Defendants have failed to pay Plaintiffs and the FLSA and Rule 23 class members one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' and the FLSA and Rule 23 class members' spread of hours exceeded ten hours, in violation of NYLL §§ 650 *et seq*. and 12 NYCRR § 146-1.6.

758.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members an additional hour's pay for each day Plaintiffs and the FLSA and Rule 23 class members' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

759.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

760.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

761.    Defendants have failed to provide Plaintiffs and the FLSA and Rule 23 class members with a written notice, in English and in Spanish, Plaintiffs and the FLSA and Rule 23 class members' primary language, containing: the rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

762.    Defendants are liable to each Plaintiff and each FLSA and Rule 23 class member in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

763.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

764.    With each payment of wages, Defendants have failed to provide Plaintiffs and the FLSA and Rule 23 class members with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and the basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

765.    Defendants are liable to each Plaintiff and each FLSA and Rule 23 class member in the amount of $5,000.00, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

766.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

767.    Defendants have required Plaintiffs and the FLSA and Rule 23 class members to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools

of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; NYLL §§ 193 and 198-b.

768.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

769.    Plaintiffs and the FLSA and Rule 23 class members repeat and reallege all paragraphs above as though fully set forth herein.

770.    At all relevant times, Defendants have been Plaintiffs and the FLSA and Rule 23 class members' employers within the meaning of NYLL §§ 2 and 651.

771.    NYLL § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

772.    Defendants have unlawfully misappropriated a portion of Plaintiffs and the FLSA and Rule 23 class members' tips that have been received from customers.

773.    Defendants have knowingly and intentionally retained a portion of Plaintiffs and the FLSA and Rule 23 class members' tips in violations of the NYLL and supporting Department of Labor Regulations.

774.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the FLSA and Rule 23 class members respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(c)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(d)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(e)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(f)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA and Rule 23 class members;

(g)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(h)      Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(i)      Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class members;

(j)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class members;

(k)      Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs and the FLSA and Rule 23 class members;

(l)      Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and the Hospitality Wage Order are willful as to Plaintiffs and the FLSA and Rule 23 class members;

(n)      Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(o)      Awarding Plaintiffs and the FLSA and Rule 23 class members damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL

§§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs and the FLSA and Rule 23 class members demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        October 21, 2021

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                              By:         /s/ Michael Faillace
                                    Michael Faillace [MF-8436]
                                    60 East 42nd Street, Suite 4510
                                    New York, New York 10165
                                    Telephone: (212) 317-1200
                                    Facsimile: (212) 317-1620
                                    *Attorneys for Plaintiffs*