UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTEBAN FLORES BARRETO PELON, ENRIQUE J.
BALDERAS, FRANCISCO FLORES BARRETO, EDGAR
EDUARDO MONTERROSO LOPEZ, DAGOBERTO FLORES
BARRETO, HECTOR PLIEGO MASTACHE, HILARIO
BARRETO GARCIA (A.K.A. WILLY), JOSE MANUEL
BARRETO CORTEZ, JUAN ZEFERINO, JOSE VICTOR
GARCIA CASTELAN (A/K/A VICTOR GARCIA), SERGIO
GARCIA CASTELAN, BALTAZAR DE LOS SANTOS
HERNANDEZ, EDUARDO DE JESUS NORIEGA, FABIAN DE
JESUS GREGORIO, HONORIO CANDIA LIBRADO, JUAN
CARLOS CARDENAS, MARCELINO CRUZ, MELVIN
RAMIREZ, MILAN FLORES HELADIO, RAUL VILLEGAS
PERALTA, ANTONIO LOPEZ, JUAN PABLO BARRETO
ANZURES, OCTAVIO PERALTA MARCELO, WILMER
BATEN, SIXTO VICENTE, ELICIAS LORENZO MEJIA
SAPON, JILMAR RAMIREZ  (A/K/A JOSE PEREZ), RAFAEL
VALENCIA ORTEGA, and JUAN JOSE CRUZ GARCIA, *on
behalf of others similarly situated,*

Case No. 19-CV-00502 (RWL)

                    Plaintiffs,

          v.

GABI OPERATING CORP. (D/B/A MARINARA PIZZA
(F/D/B/A SABA'S PIZZA)), BRITTGAB CORP. (D/B/A SABA'S
PIZZA), PIZZA 84 LLC (D/B/A MARINARA PIZZA), PIZZA 54
INC. (D/B/A MARINARA PIZZA), MOSHGAB CORP. (D/B/A
SABA'S PIZZA), PIZZA 26 LLC (D/B/A MARINARA PIZZA),
PIZZA 10 LLC (D/B/A MARINARA PIZZA), GABRIEL
WEISER and JONATHAN BANAYAN,

                    Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND COLLECTIVE SETTLEMENT

---

William K. Oates
CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, NY 10165
(212) 317-1200
*Attorneys for the Named Plaintiffs, the putative Rule 23 Class, and the putative FLSA Collective*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii-v

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................... 1

I.     PLAINTIFFS' ALLEGATIONS ................................................................................ 2

II.    DISCOVERY, SETTLEMENT NEGOTIATIONS, AND SETTLEMENT AGREEMENTS ..................... 2

III.   DISSEMINATION OF CLASS NOTICES ...................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.     CLASS CERTIFICATION REQUIREMENTS OF RULE 23 ARE MET FOR SETTLEMENT
       PURPOSES .................................................................................................................. 4

II.    THE CLASS ACTION SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR ............... 5

       A.   Procedural Fairness ........................................................................................ 6

       B.   Substantive Fairness ...................................................................................... 7

            1.   Further Litigation and Trial Would be Complex, Costly, and
                 Long (*Grinnell* Factor 1) ......................................................... 8

            2.   The Class's Positive Reaction to the Settlement (*Grinnell*
                 Factor 2) ................................................................................... 9

            3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
                 Case Responsibly (*Grinnell* Factor 3)................................... 10

            4.   Plaintiffs Would Face Risks of Liability and Damages if the Case
                 Proceeded (*Grinnell* Factors 4 and 5) .................................. 11

            5.   Establishing and Maintaining the Class Through Trial Presents
                 Risk (*Grinnell* Factor 6)........................................................ 12

            6.   Ability of Defendants to Withstand a Greater Judgment is
                 Not Determinative (*Grinnell* Factor 7) ................................ 13

            7.   The Settlement Payment is Substantial in Light of the
                 Possible Recovery and the Attendant Risks of Litigation
                 (*Grinnell* Factors 8 and 9)..................................................... 14

III.   THE CLASS NOTICE WAS ADEQUATE AND SATISFIED DUE PROCESS ................................ 15

IV.    THE PROPOSED SERVICE AWARDS ARE FAIR AND REASONABLE ................................... 15

V.     THE CLAIMS ADMINISTRATOR'S FEES SHOULD BE APPROVED ................................... 17

VI.    THE PROPOSED CLASS COUNSEL FEES SHOULD BE APPROVED................................... 17

A.   Class Counsel is Entitled to Attorneys' Fees of 29.5% of the Original Maximum Settlement Amount ................................................................................... 18

B.   The Percentage Method is the Preferred Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit ............................................................... 18

    1.   Class Counsel's Time and Labor (*Goldberger* Factor 1) ......................... 19

    2.   Magnitude and Complexity of the Litigation (*Goldberger* Factor 2); Risk of Litigation (*Goldberger* Factor 3) ............................................. 20

    3.   Quality of Representation (*Goldberger* Factor 4) .................................... 21

    4.   Fee in Relation to the Settlement (*Goldberger* Factor 5) ......................... 22

    5.   Public Policy Considerations (*Goldberger* Factor 6) ............................... 23

C.   The Lodestar Cross-Check Further Supports an Award of Fees to Class Counsel of 29.5% of the Original Maximum Settlement Amount ............................................... 24

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) ...............................22-23

*Ballinger v. Advance Magazine Publishers, Inc.*, 2014 U.S. Dist. LEXIS 179538
    (S.D.N.Y. Dec. 29, 2014) ...........................................................................................  13

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y.  2013)...........................................9, 10, 25

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980) .......................................................................18

*Bryant v. Potbelly Sandwich Works, LLC.*, 2020 U.S. Dist. LEXIS 21900
    (S.D.N.Y. Feb. 4, 2020) .................................................................................................13-14

*Caballero v. Senior Health Partners, Inc.*, 2018 U.S. Dist. LEXIS 207128
    (E.D.N.Y. Dec. 7, 2018)..................................................................................................  23

*Castagna v. Madison Square Garden, L.P.,* 2011 U.S. Dist. LEXIS 64218
    (S.D.N.Y. June 7, 2011) .................................................................................................  20

*Charron v. Weiner*, 731 F. 3d 241 (2d. Cir. 2013) .....................................................................  6

*Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) .... 5

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)...........................................6, 7, 14

*Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ......................... 6

*Cohan v. Columbia Sussex Mgmt., LLC*, 2018 U.S. Dist. LEXIS 170192
    (E.D.N.Y. Sept. 28, 2018).............................................................................................  22

*De La Cruz v. Manhattan Parking Group LLC*, 2022 U.S. Dist. LEXIS 123211
    (S.D.N.Y. July 12, 2022) ..............................................................................................  24-25

*DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261
    (S.D.N.Y. May 7, 2015) ..............................................................................................7 -8, 9, 23

*Donnelly v. Peter Luger of Long Island, Inc.*, 2014 U.S. Dist. LEXIS 203725
    (E.D.N.Y. Nov. 13, 2014)............................................................................   19, 23

*Ebbert v. Nassau County*, 2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011) .............. 8

*Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337 (S.D.N.Y. 2012) ............. 21

*Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29, 2014)............. 6, 18, 23

*Flores v. CGI Inc.*, 2022 U.S. Dist. LEXIS 192572 (S.D.N.Y. Oct. 21, 2022) .......................... 6

*Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290 (E.D.N.Y. 2015) ......... 17

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) ................................. 18-19, 23, 24

*Guevoura Fund Ltd. v. Sillerman*, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ...... 6

*Hart v. RCI Hospitality Holdings, Inc.*, 2015 U.S. Dist. LEXIS 126934
(S.D.N.Y.  Sept. 22, 2015) ................................................................................. 15

*Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) .............. 11, 16

*Hernandez v. Merrill Lynch & Co.*, 2013 U.S. Dist. LEXIS 42681
(S.D.N.Y. Mar. 21, 2013) ................................................................................. 12, 22

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub.*
*nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................ 8, 10, 14

*In re Telik, Inc. Sec. Litigation*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................... 17

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litigation*, 724 F. Supp. 160
(S.D.N.Y. 1989) ................................................................................................. 19

*Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ...... 14, 20-21, 24

*Karic v. Major Automotive. Cos.*, 2016 U.S. Dist. LEXIS 57782
(E.D.N.Y. Apr. 27, 2016) ............................................................... 9, 11, 14-15, 20

*Karic v. Major Automotive Cos.*, 2015 U.S. Dist. LEXIS 171730 (E.D.N.Y. Dec. 22, 2015), *rep.*
*& rec. adopted by* 2016 U.S. Dist. LEXIS 8777 (E.D.N.Y. Jan. 25, 2016) .............................. 13

*Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ................... 15

*Lovaglio v. W&E Hospitality Inc.*, 2012 U.S. Dist. LEXIS 94077 (S.D.N.Y. July 6, 2012) .......... 15

*Martinek v. Amtrust Fin. Servs., Inc.,* 2022 U.S. Dist. LEXIS 209097
(S.D.N.Y. Nov. 16, 2022) ................................................................................. 22

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................................. 22

*McMahon v. Olivier Cheng Catering & Events*, 2010 U.S. Dist. LEXIS 18913
(S.D.N.Y. Mar. 2, 2010) ................................................................................. 13

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) ................................................. 5

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ......................................................................... 14

*Pearlstein v. Blackberry Ltd.,* 2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. Sept. 29, 2022) ...... 7, 22

*Prabir v. Bukhara Indian Cuisine, Inc.*, 2019 U.S. Dist. LEXIS 39354
(S.D.N.Y. Mar. 12, 2019) ................................................................................. 5, 12, 14

*Quow v. Accurate Mechanical Inc.*, 2018 U.S. Dist. LEXIS 114524
(S.D.N.Y. July 10, 2018) ................................................................................ 15-16

*Radosti v. Hudson's Bay Co.*, 2022 U.S. Dist. LEXIS 112279 (S.D.N.Y. June 24, 2022) .......... 24

*Raniere v. Citigroup Inc*., 310 F.R.D. 211 (S.D.N.Y. 2015)............................................... 10, 11

*Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) .... 16

*Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. June 30, 2017) ....................... 17

*Sandoval v. Philippe N. Am. Rests., LLC*, 2018 U.S. Dist. LEXIS 57589
(S.D.N.Y. April 4, 2018)........................................................................................... 5

*Sewell v. Bovis Lend Lease, Inc.*, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012) ....... 25

*Sierra v. Spring Scaffolding LLC*, 2015 U.S. Dist. LEXIS 178006
(E.D.N.Y. Sept. 30, 2015)....................................................................................... 19

*Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596
(S.D.N.Y. July 31, 2014) ........................................................................................ 21

*Surdu v. Madison Global, LLC*, 2018 U.S. Dist. LEXIS 48356
(S.D.N.Y. Mar. 23, 2018) ................................................................................. 21, 23

*Vaccaro v. New Source Energy Partners L.P.*, 2017 U.S. Dist. LEXIS 205785
(S.D.N.Y. Dec. 14, 2017)........................................................................................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96 (2d Cir. 2005) ........................ 5, 6, 12, 19

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .....................................................5-6, 9-10

*Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 66230 (S.D.N.Y. May 12, 2014) ............. 6

## **RULES**

Fed. R. Civ. P. 23(a)................................................................................................... 4

Fed. R. Civ. P. 23(b)................................................................................................... 4

Fed. R. Civ. P. 23(e)................................................................................................ 5, 6

## PRELIMINARY STATEMENT

The Named Plaintiffs (at times, referred to as "Plaintiffs") submit this Memorandum of Law in support of their Motion for Final Approval of the Class Action and Collective Settlement (the "Motion").  By this Motion, the Named Plaintiffs respectfully request the Court to: 1) grant final approval of the Rule 23 Class and Collective Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of William K. Oates dated January 31, 2023 ("Oates Decl."), which the Court preliminarily approved on August 5, 2002 (ECF Dkt. 185); 2) confirm certification of the class and collective action; 3) confirm that the procedures for notifying the Class Members about the settlement, including the Notice to Class Members and related documents, constituted the best notice to all Class Members practicable under the circumstances and fully satisfied all necessary requirements of due process; 4) award the Named Plaintiffs service awards in the amount of $1,193.00; 5) award Class Counsel attorneys' fees in the amount of $25,639.00; 6) award the Claims Administrator its fees and costs in the amount of $11,997.00; 7) dismiss the within Action with prejudice; and 8) grant such other and further relief as this Court deems, just, proper, and equitable.

For the reasons explained in detail below, as well as those set forth in the accompanying Oates Decl., the Court should approve the settlement as a fair, reasonable, and adequate resolution of bona fide disputes that was reached following arm's length negotiations between experienced wage and hour attorneys.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs respectfully refer the Court to the Oates Decl. and the Joint Motion for Preliminary Approval and supporting documents (ECF Nos. 180, 181, 181-1, 181-2, and 182) for a full recitation of the factual and procedural history of the Action.  For convenience, the facts and procedure most relevant to this Motion are summarized below.

## I.      Plaintiffs' Allegations

Plaintiffs allege that Defendants failed to pay them minimum wage, failed to pay them overtime, failed to pay them spread of hours pay, failed to provide them written notice of their rate of pay in both English and Spanish, failed to provide accurate wage statements with each payment of wages, made unlawful deductions from their tips, and failed to reimburse them for purchases of certain "tools of the trade."  Plaintiffs allege claims under both federal and state law.  Oates Decl. ¶ 7.

## II.     Discovery, Settlement Negotiations, and Settlement Agreements

On June 8, 2021, the parties attended a telephonic settlement conference before the Hon. Magistrate Judge Robert W. Lehrburger.  Unfortunately, no settlement was reached. Following the initial settlement conference, Magistrate Judge Robert W. Lehrburger ordered a second settlement conference to be held on July 12, 2021, this time in-person at the federal court house. That conference continued after the Court closed at the conclusion of normal business hours and lasted eight full hours.  The parties ultimately reached a claims made class and collective action settlement in principle on that date. Oates Decl. ¶ 11.

On July 13, 2021, the parties informed the Court they had reached an agreement in principle. Oates Decl. ¶ 12.  On June 3, 2022, as per the Court's Order dated April 18, 2022 (ECF Dkt. 158), the Named Plaintiffs and Defendants submitted an executed agreement for Court approval relating to the Named Plaintiffs' FLSA claims only.  *Id.* ¶ 13.  On July 18, 2022, the parties submitted an executed Settlement Agreement relating to the Named Plaintiffs' NYLL claims and the other Class Members' NYLL and FLSA claims.  *Id.* ¶ 14.  That Settlement Agreement is subject to Plaintiffs' Motion for Final Approval.  *Id.*; *see also* Ex. 1.  On July 18, 2022, the parties also filed a Joint Motion for Preliminary Approval of Class Action Settlement and supporting documents.  (E.C.F. Dkt. Nos. 180, 181, 181-1, 181-2, 182). *Id.* ¶ 15.  On August 5, 2022, the Court conducted a

hearing, during which it preliminarily approved the parties' Settlement Agreement and the parties' agreement that related to the Named Plaintiffs' FLSA claims only ("Preliminary Approval Order") (ECF Dkt. Nos. 184, 185).  *Id.* ¶ 16.

### III.   Dissemination of Class Notices

On or about September 7, 2022, Counsel for the Defendants provided Rust Consulting, the Claims Administrator, with a mailing list containing Class Member's names, last-known addresses, and applicable employment information ("Class List").  The Class List contained data for 252 potential Class Members.  Oates Decl. ¶ 40; Ex. 2 ¶ 8.

On September 21, 2022, the Claims Administrator mailed 221 Class Members the Notice, Claim Form, and IRS Tax Form in both English and Spanish.  Oates Decl. ¶ 41; Ex. 2 ¶ 8.

Class Notices could not be mailed for 31 class members for which no address was provided. Oates Decl. ¶ 42; Ex. 2 ¶ 8.

On November 11, 2022, Class Counsel provided Rust Consulting with updated addresses for nine (9) of the 31 Class Members previously identified with no address provided.  On November 14, 2022, Rust Consulting mailed the Class Notice to the nine (9) Class Members with updated addresses leaving 22 class members with no address to send the Class Notice to.  Oates Decl. ¶ 43; Ex. 2 ¶ 9.

On November 21, 2022, the parties agreed to one (1) additional Class Member being included in the matter. The parties agreed that the Response date for this class member would be December 6, 2022.  On November 21, 2022, Rust Consulting mailed the Class Notice to the one (1) additional Class Member advising that he could submit a Claim Form, exclusion and/or objection postmarked by December 6, 2022.  Oates Decl. ¶ 44; Ex. 2 ¶ 10.  On November 21, 2022, the parties modified the Settlement Agreement to add this Class Member in this action for settlement purposes only.  *See* Exhibit 2.  Further, pursuant to Exhibit 2, this class member's estimated Individual Settlement Amount was added to the maximum settlement amount and the Settlement Common Fund.

Rust Consulting performed 57 address traces on Class Notices returned as undeliverable for the first time as of November 20, 2022.  The address trace utilizes the Class Member's name, previous address, and Social Security Number for locating a current address.  Of the 57 traces performed, 15 more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First-Class mail.  Of the 57 traces performed, Rust Consulting did not obtain updated addresses for 42 undeliverable Class Notices.  Of the 15 Class Notices mailed to a more current address identified from trace, two (2) Class Notices were returned to Rust Consulting as undeliverable a second time.  As of this date, 44 Class Notices remain undeliverable in addition to the 22 Class Notices for which no address was provided for a total of 66 undeliverable Class Notices.  Oates Decl. ¶ 45; Ex. 2 ¶ 10.

As of January 31, 2023, Rust Consulting has received twenty-nine (29) timely-filed Claim Forms. Oates Decl. ¶ 46; Ex. 2 ¶ 12.  No Class Members have opted out of the settlement. Oates Decl. ¶ 47; Ex. 2 ¶ 12.  No Class Members have objected to the settlement. Oates Decl. ¶ 48; Ex. 2 ¶ 12.

Rust Consulting's fees will be paid for as follows: half of the cost will be paid by Defendants directly and the other half will be paid for by Class Counsel directly, and not be deducted from the Qualified Settlement Fund.  Rust Consulting estimates that its fees and costs will be approximately $11,997.00, which includes additional work to be done.  Oates Decl. ¶ 50; Ex. 2 ¶ 15.

## ARGUMENT

## I.   Class Certification Requirements of Rule 23 are Met For Settlement Purposes.

Plaintiffs respectfully refer the Court to the parties' Motion for Preliminary Approval, which explains in detail that all class action certification requirements of Rules 23(a) and (b) are met for settlement purposes. *See generally* ECF Dkt. No. 182 at 13-21.  That motion further explains that

4

appointment of CSM Legal, P.C. as Class Counsel is proper. *Id.* at 21-22

## II.     The Class Action Settlement is Procedurally and Substantively Fair.

Since this is a class action, and because it involves FLSA claims, the Court must approve the settlement.  The procedure for approval includes a final settlement approval hearing at which class members and counsel for the parties may be heard in regard to the settlement and may present arguments concerning the fairness, adequacy, and reasonableness of the settlement.  *See generally*, Fed. R. Civ. P. 23(e)(2).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

As an initial matter, the law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation omitted); *McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *see also Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *34-35 (S.D.N.Y. Oct. 16, 2019) (noting the "law favors compromise and settlement of class action suits" and stating "courts should give proper deference to the private consensual decision of the parties") (citations omitted).

The "parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle." *Sandoval v. Philippe N. Am. Rests., LLC*, 2018 U.S. Dist. LEXIS 57589, at *4 (S.D.N.Y. April 4, 2018); *see also Prabir v. Bukhara Indian Cuisine, Inc.*, 2019 U.S. Dist. LEXIS 39354, at *4 (S.D.N.Y. Mar. 12, 2019) (stating "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement").  "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Wright*

*v. Stern*, 553 F. Supp. 2d 337, 343-44 (S.D.N.Y. 2008) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).

In this matter, the settlement is procedurally and substantively fair and reasonable, and it is the product of arm's-length negotiations between experienced wage-and-hour counsel.

### A.   <u>Procedural Fairness.</u>

Under Fed. R. Civ. P. 23(e)(2), to grant final approval of a settlement, the Court must determine whether the proposed settlement is "fair, reasonable, and adequate." *Charron v. Weiner*, 731 F. 3d 241, 247 (2d. Cir. 2013). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Flores v. CGI Inc.*, 2022 U.S. Dist. LEXIS 192572, at *25 (S.D.N.Y. Oct. 21, 2022). In deciding whether a class settlement is procedurally fair, "courts examine the negotiation process leading to the settlement." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *10-11 (S.D.N.Y. Jan. 29, 2014) (citing *Wal-Mart Stores, Inc.,* 396 F.3d at 116. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted). Where the settlement was achieved through experienced counsels' arm's-length negotiations, then, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) (citation omitted). *See also, Guevoura Fund Ltd. v. Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *18 (S.D.N.Y. Dec. 18, 2019) ("The active involvement of experienced and independent mediators in the negotiation of the settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness."); *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 66230, at *5 (S.D.N.Y. May 12, 2014) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.")

6

The terms of the class action settlement in this matter are the product of extensive negotiations for almost four years.  During that time, the parties met and conferred on numerous occasions both in-person and by telephone, attended various court conferences, exchanged relevant information concerning the Named Plaintiffs and other Class Members' claims and Defendants' defenses thereto, and ultimately participated in one mediation session and then two separate settlement conferences before Magistrate Judge Robert W. Lehrburger, the second of which continued after the Court closed at the conclusion of normal business hours and lasted eight full hours, but fortunately resulted in a class settlement in principle.  (Oates Decl. ¶11). The negotiations were at all times hard-fought and at arm's length. (Oates Decl. ¶ 18).  Accordingly, based on the foregoing, the settlement is procedurally fair, reasonable, and adequate.

###### B.   <u>Substantive Fairness</u>.

To determine whether a settlement is substantively fair, reasonable, and adequate, courts in the Second Circuit use the nine-factor test enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  *See, e.g.*, *Pearlstein v. Blackberry Ltd.,* 2022 U.S. Dist. LEXIS 177786, at *8-9 (S.D.N.Y. Sept. 29, 2022) (providing the nine-factor test from *Grinnell* to determine the "substantive fairness of the [FLSA] agreement").

The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463.  "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement. . . ."  *DeLeon v. Wells Fargo*

*Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261, at *10-11 (S.D.N.Y. May 7, 2015).   Therefore, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA collective settlement.   In this matter, all factors support approval of the settlement.

### 1.   Further Litigation and Trial Would be Complex, Costly, and Long (Grinnell Factor 1)

The settlement avoids further litigation, additional discovery (including depositions and expert discovery), motion practice, trial, and possible appeals, all of which will be significantly expensive.  Class actions are generally complex and preparing and putting on evidence to support plaintiffs' position would consume tremendous time and financial resources.  *Ebbert v. Nassau County*, 2011 U.S. Dist. LEXIS 150080, at *24-25 (E.D.N.Y. Dec. 22, 2011).  Settlements "avoid[] the costs, delays and multitude of other problems associated with [class actions]." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, as there are 29 Named Plaintiffs, Nine Named Defendants, and 253 Rule 23 Class Members, and the Named Plaintiffs have alleged claims under both state and federal law.  *See generally*, Oates Decl. ¶¶ 7, 40, 44.

Further, the Litigation has been ongoing for more than four (4) years.   Further litigation without settlement would necessarily result in additional costs and delay.  Towards that end, were the case to continue, document production and analysis would be needed.  Depositions would be required by both sides, including depositions of the Plaintiffs and the Defendants.  Plaintiffs would move for class and collective certification.  To the extent certification were granted and any dispositive motions denied, a trial would be necessary.  Preparing and putting on evidence on the pertinent factual and legal issues would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes.

A fact-intensive trial would require extensive testimony by Defendants, Plaintiffs, and numerous Class Members.  Litigation over attorneys' fees could follow.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  Oates Decl. ¶ 19.  This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of approval of the settlement.

**2.      The Class's Positive Reaction to the Settlement (*Grinnell* Factor 2)**

"The reaction of Class Members to the settlement is the most significant factor in considering the fairness of the Settlement Agreement."  *Karic v. Major Automotive Cos.*, 2016 U.S. Dist. LEXIS 57782, at *17 (E.D.N.Y. Apr. 27, 2016).  On September 21, 2022, the Claims Administrator mailed the Class Notice to the Class Members in English and Spanish, which fully explained, *inter alia*, the nature of this Action, Class Members' rights, including their rights to opt-out of and object to the proposed settlement, and the procedures that Class Members must follow. Oates Decl. ¶¶ 27-39, 43; Ex. 2 ¶ 8.   After dissemination of the Class Notices, Class Counsel received telephone calls from several Class Members and answered their questions about their claims and concerns.  Oates Decl. ¶ 49.

The Class Members' response to the proposed settlement has been positive.  As of January 31, 2023, no Class Members have opted out and no class members have submitted an objection to the settlement. Oates Decl. ¶¶ 47-48; Ex. 2 ¶¶ 13-14.  "'The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."  *De Leon,* 2015 U.S. Dist. LEXIS 65261, at *9 (citing *Wright v. Stern*, 553 F. Supp. at 345 (S.D.N.Y. 2008)); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (granting final approval where no class member objected to the settlement and eight out of 1,735 class members opted out, noting "[t]his favorable response demonstrates that the class approves of the Settlement and supports final approval"); *Wright,* 553 F. Supp. 2d at 344–45, 347 (approving

9

settlement where 13 out of 3,500 class members objected and 3 opted out).  Accordingly, the second *Grinnell* factor weighs in favor of approval of the settlement.

> ### 3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)

While completing class discovery and preparing this case through trial would require hundreds of additional hours, the informal discovery the parties have undertaken is sufficient to warrant final approval of the settlement. When considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths and defenses asserted by the defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 218 (S.D.N.Y. 2015) (internal quotation and citation omitted); *see also Beckman*, 293 F.R.D. at 475 (granting final approval where "[p]laintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue," having "participat[ed] in a day-long mediation [that] allowed them to further explore the claims and defenses"). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

In this action, the parties' discovery is sufficient.  Class Counsel, and its predecessor, Michael Faillace & Associates, P.C., have, *inter alia*, interviewed the Named Plaintiffs and two other class members who sought to join the Action as Plaintiffs; gathered information relevant to the claims in the litigation; obtained, reviewed, and analyzed documents produced by Defendants; fielded questions from Plaintiffs and Class Members; performed legal research; created a damages analysis; engaged in numerous and lengthy settlement negotiations; and attended and prepared for mediation and Court conferences and hearings.  Oates Decl. ¶ 58.

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of their respective positions, so this factor weighs in favor of final approval. *See Karic*, 2016 U.S. Dist. LEXIS 57782, at \*19 (favoring settlement approval where "thousands of pages of records from defendants" were produced, allowing the parties to "appreciate the merits of the case"); *Raniere*, 310 F.R.D. at 218 (approving settlement where "less than extensive" discovery permitted plaintiffs to "estimate" damages and evaluate weaknesses in case); *Flores*, 2014 U.S. Dist. LEXIS 11026, at \*15 (finding third *Grinnell* factor in favor of final approval where counsel gathered all information needed to "weigh the strengths and weaknesses of [Class Members'] claims and to accurately estimate the damages at issue"). Accordingly, the third *Grinnell* factor weighs in favor of approval of the settlement.

### 4. Plaintiffs Would Face Risks of Liability and Damages if the Case Proceeded (Grinnell Factors 4 and 5)

While Plaintiffs and Class Counsel believe Plaintiffs' claims have merit and were asserted in good faith, they also recognize Defendants have an experienced counsel who mounted defenses to liability and damages. "In weighing the risks of establishing liability and damages, the Court 'must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574, at \*22 (S.D.N.Y. May 23, 2014).

Plaintiffs allege that Defendants failed to pay them minimum wage, failed to pay them overtime, failed to pay them spread of hours pay, failed to provide them written notice of their rate of pay in both English and Spanish, failed to provide accurate wage statements with each payment of wages, made unlawful deductions from their tips, and failed to reimburse them for purchases of certain "tools of the trade." Oates Decl. ¶ 7. Defendants deny the Named Plaintiffs' claims and the class claims asserted by the Class Members. Oates Decl. ¶ 8. As per Defendants, the

documents produced revealed that Plaintiffs did not earn the wages that they claimed to have earned; did not work the number of hours that they claimed to have worked; and Defendants provided wage notices to Plaintiffs, in both English and Spanish, and provided paystubs, all in compliance with applicable law.  Oates Decl. ¶ 10.

In light of the defenses available to Defendants and the fact-intensive nature of proving liability under the FLSA and NYLL, a trial on the merits could pose risks to Plaintiffs as to both liability and damages.  While Plaintiffs believe their claims are meritorious and that they could ultimately establish Defendants' liability on these claims, CSM Legal, P.C. is experienced and realistic and understands that the resolution of liability issues, the outcome of the trial, and the appeals process are inherently uncertain in terms of outcome and duration.  Regardless of the perceived strength of Plaintiffs' case, establishing liability is "no sure thing." *Wal-Mart*, 396 F.3d at 118.  "The question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ."  *Prabir*, 2019 U.S. Dist. LEXIS 39354, at *7.  "Settlement eliminates the risk, expense, and delay inherent in the litigation process." *Hernandez v. Merrill Lynch & Co*., 2013 U.S. Dist. LEXIS 42681, at *18 (S.D.N.Y. Mar. 21, 2013).  Given that the proposed settlement alleviates all such uncertainty, the fourth and fifth *Grinnell* factors weigh in favor of final approval.

### 5.     Establishing and Maintaining the Class Through Trial Presents Risk (Grinnell Factor 6)

The risks of obtaining class certification and maintaining class and collective certification through trial also support final approval.  *See Vaccaro v. New Source Energy Partners L.P.*, 2017 U.S. Dist. LEXIS 205785, at *16 (S.D.N.Y. Dec. 14, 2017) ("The process of class certification would have subjected Plaintiffs to considerably more risk." (citation omitted)).  Although Plaintiffs

and their counsel believe that they could obtain class certification in a contested proceeding, this issue is not risk-free. Specifically, Defendants would likely argue that there are individualized questions as to the Named Plaintiffs' job duties, number of hours worked, amount of wages paid, and similar questions regarding the other class members that make certification and ultimately trial on a collective and class-wide basis impractical. In addition, a contested class certification motion will result in additional discovery and further delay the within Action. *See., e.g., McMahon v. Olivier Cheng Catering & Events*, 2010 U.S. Dist. LEXIS 18913, at * 13-14 (S.D.N.Y. Mar. 2, 2010) (holding that "[a] contested class certification motion would likely require extensive discovery and briefing" and that "[i]f the Court granted a contested class certification motion, Defendants could seek to file a[n] appeal and/or move to decertify, which would require additional rounds of briefing.")

Settlement eliminates the risk, expense, and delay of maintaining the class through trial. Thus, this factor also weighs in favor of final approval.

### 6.      Ability of Defendants to Withstand a Greater Judgment is Not Determinative (Grinnell Factor 7)

The parties negotiated extensively over the settlement payment, taking into account Defendants' ability to pay an amount that would compensate the class for their alleged unpaid wages. By agreeing to the settlement, "defendants have committed to fund the settlement amount, eliminating the difficulties and risk of collection in the future." *Karic v. Major Automotive Cos.*, 2015 U.S. Dist. LEXIS 171730, at *30 (E.D.N.Y. Dec. 22, 2015), *rep. & rec. adopted by* 2016 U.S. Dist. LEXIS 8777, at *4-5 (E.D.N.Y. Jan. 25, 2016). Moreover, even if Defendants could withstand a greater judgment, "this fact, by itself, however, does not render the proposed settlement unfair." *Ballinger v. Advance Magazine Publishers, Inc.*, 2014 U.S. Dist. LEXIS 179538, at *6 (S.D.N.Y. Dec. 29, 2014); *see also Bryant v. Potbelly Sandwich Works, LLC.*, 2020 U.S. Dist.

LEXIS 21900, at *12 (S.D.N.Y. Feb. 4, 2020) (citations omitted) ("[D]efendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") Accordingly, the seventh *Grinnell* factor weighs in favor of settlement approval.

> ### 7. The Settlement Payment is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)

The final two *Grinnell* factors weigh in favor of settlement approval.   The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian*, 80 F. Supp. 2d at 178.  Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . ." *Id.  Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *34 (S.D.N.Y. Sept. 16, 2011) (internal quotations omitted). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n. 2.

The Settlement Payment is a reasonable, fair, and adequate amount because it is a compromise of hotly disputed matters, providing benefits to  Class Members. *See Prabir*, 2019 U.S. Dist. LEXIS 39354, at *7-8 (citation omitted) (stating immediate disbursement of substantial monies to the class pursuant to a settlement is reasonable "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road. . . .")  Defendants' payment of the maximum Settlement Amount ensures that  the Named Plaintiffs and other Class Members will receive a recovery without the aforementioned risks. *See Karic*, 2016  U.S. Dist. LEXIS  57782,

at *23 ("Courts have found settlement funds representing far less than the maximum possible recovery to be reasonable.")  The settlement represents "a meaningful benefit to the Class when considered against the obstacles to proving plaintiffs' claims."  *Id.* at *22.  Therefore, the final *Grinnell* factors favor approval.  *See Lovaglio v. W&E Hospitality Inc.*, 2012 U.S. Dist. LEXIS 94077, at *4-5 (S.D.N.Y. July 6, 2012) (granting final approval where "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.")

## III.    The Class Notice Was Adequate and Satisfied Due Process

On September 21, 2022, the Claims Administrator mailed the Class Notice to the Class Members in English and Spanish, which fully explained, *inter alia*, the nature of this Action, Class Members' rights, including their rights to opt-out of and object to the proposed settlement, and the procedures that Class Members must follow.  Oates Decl. ¶¶ 27-39, 43; Ex. 2 ¶ 8.   Further, the Court approved the Class Notice, as set forth in the Court's Preliminary Approval Order.  (ECF Dkt. No. 185).  Accordingly, the Class Notice was adequate and satisfied due process.

## IV.    The Proposed Service Awards are Fair and Reasonable

The proposed service awards to the Named Plaintiffs in the amount of $1,193.00 are fair and reasonable.   Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010). *See also*, *Hart v. RCI Hospitality Holdings, Inc.*, 2015 U.S. Dist. LEXIS 126934, at *49 (S.D.N.Y. Sept. 22, 2015) (service awards "compensate class representatives for their time and effort and for the risks and burdens they bear in bringing a class action lawsuit."); *Quow v. Accurate Mechanical Inc.*, 2018 U.S. Dist. LEXIS 114524, at *12 (S.D.N.Y. July 10, 2018) (stating that service awards compensate named plaintiffs for their "time and effort expended in assisting the

15

prosecution of the litigation, the risks incurred by becoming and continuing as a litigant," among other burdens, and noting these awards are "'particularly appropriate in the employment context.'") (citation omitted); *Henry*, 2014 U.S. Dist. LEXIS 72574, at *27 ("In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate.")

The Named Plaintiffs actively participated in this Action and assisted Class Counsel throughout the life of the Action.  Towards that end, these individuals expended significant time providing critical facts and valuable input to Class Counsel, attended telephone and in-person conferences with Class Counsel, participated in settlement negotiations, and shouldered the risks incurred as Named Plaintiffs.  Oates Decl. ¶¶ 51-52.

In addition, Named Plaintiffs Esteban Flores Barreto Pelon, Dagoberto Flores Barreto, Juan Carlos Cardenas, Juan Jose Cruz Garcia, Melvin Ramirez, Jose Manuel Barreto Cortez, Elicias Lorenzo Mejia Sapon, Juan Pablo Barreto Anzures, Hilario Barreto Garcia (a.k.a. Willy), Marcelino Cruz, Honorio Candia Librado, Enrique J. Balderas, Francisco Flores Barreto, Edgar Eduardo Monterroso Lopez, and Jilmar Ramirez (a.k.a. Jose Perez) attended the first settlement conference, and Named Plaintffs Juan Pablo Barreto Anzures, Hector Pliego, Esteban Flores Barreto Pelon, Enrique J. Balderas, Dagoberto Flores Barreto, and Francisco Flores Barreto attended the second settlement conference.  Oates Decl. ¶ 53.

The Service Awards are consistent with payments made to named plaintiffs in this Circuit. *See, e.g.*, *Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115984, at *3-4, 24 (S.D.N.Y. Aug. 16, 2011) (approving $50,000.00 in combined service awards, representing 16.67% of the $300,000.00 settlement amount).  For their services, and for shouldering the risk of being the Named Plaintiffs in the Litigation, the Court should grant each Named Plaintiff a Service Award in the amount set forth in the Settlement Agreement.  *See* Ex. 1, § 3.3(A).  Further, the combined

service awards requested here, totaling $1,193.00, are fair and reasonable in that each Named Plaintiffs' service award is equal to up to ten percent (10%) of his estimated payout, calculated as of July 18, 2022, and collectively total 1.37% of the original maximum Settlement Payment. Oates Decl. ¶ 54.

## V.    The Claims Administrator's Fees Should Be Approved

The parties retained Rust Consulting to administer the settlement.  Rust Consulting's fees and costs are to be paid by Plaintiffs' Counsel and Defendants, equally, and not be deducted from the Qualified Settlement Fund.  Oates Decl. ¶ 50.  Rust Consulting estimates that its fees and costs will be approximately $11,997.00.  Oates Decl. ¶ 50; Ex. 2 ¶ 15.  These fees include both fees incurred and anticipated future costs for completion of the administration.  Oates Decl. ¶ 50; Ex. 2 ¶ 15.

"Courts regularly award administrative costs associated with providing notice to the class." *Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 103096, at \*25 (S.D.N.Y. June 30, 2017); *see also, Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (noting "Courts within this district have awarded up to $50,000 for the settlement claims administrator" and finding estimated fees of $33,500 to the settlement administrator as reasonable).

 For the work that it has performed and the costs that it has incurred, Plaintiffs respectfully request the Court to approve a fee of $11,997.00 to be paid to the Claims Administrator.

## VI.    The Proposed Class Counsel Fees Should Be Approved

Class Counsel's request for attorneys' fees should be approved.  It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litigation*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with

litigation pursued on their behalf." *Id.*

### A. Class Counsel is Entitled to Attorneys' Fees of 29.5% of the Original Maximum Settlement Payment

As per the parties' Joint Motion for Preliminary Approval, Class Counsel requests $25,639.00 as an award for attorneys' fees, which is approximately 29.5% of the original maximum Settlement Payment, and includes any costs and expenses incurred by Class Counsel. Oates Decl. ¶ 56. The request for attorneys' fees is less than the one-third of the original maximum Settlement Payment, is a reduction in fees from what is identified in Plaintiffs' retainer agreements, which provide that forty percent (40%) of Plaintiffs' recovery will be retained by the firm (Oates Decl. ¶ 56), and is within a reasonable range for wage-and-hour cases that has been approved by the Southern District of New York. *See, e.g., Flores*, 2014 U.S. Dist. LEXIS 11026, at *23-24 (finding class counsel's request for one-third of Settlement Fund "reasonable and consistent with the norms of class litigation" in the Second Circuit).

Class Counsel requests these fees based on the substantial amount of work it performed and the significant risk that it undertook in prosecuting the Action purely on a contingency fee basis. Oates Decl. ¶ 57. Towards that end, for more than four years since Plaintiffs commenced the within action, Class Counsel's efforts have been without compensation. *Id.* at ¶ 55. If the Action resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred. *Id.*

### B. The Percentage Method Is the Preferred Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit

In common fund situations, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000) (*citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). The rationale for this doctrine is that it prevents unjust enrichment of those benefitting from a lawsuit

without contributing to its cost. *Id.*

"The trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *See Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also, Sierra v. Spring Scaffolding LLC*, 2015 U.S. Dist. LEXIS 178006, at *19 (E.D.N.Y. Sept. 30, 2015) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'") (citation omitted). "The percentage-of-the-fund method also promotes early resolution" by "discourag[ing] plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method." *Donnelly v. Peter Luger of Long Island, Inc.*, 2014 U.S. Dist. LEXIS 203725, at *20 (E.D.N.Y. Nov. 13, 2014).

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (citing *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). In this action, all of the *Goldberger* factors weigh in favor of awarding Class Counsel its requested fees.

### 1.    Class Counsel's Time and Labor (*Goldberger* Factor 1)

Class Counsel spent over 314 hours in this case. This work included interviewing the Named Plaintiffs and two other class members who sought to join the Action as Plaintiffs; gathering information relevant to the claims in the litigation; obtaining, reviewing, and analyzing documents produced by Defendants; fielding questions from Plaintiffs and Class Members; performing legal research; creating a damages analysis; engaging in numerous and lengthy settlement negotiations;

drafting the motions for preliminary and final approval of the settlement along with supporting documents; and attending and preparing for mediation and Court conferences and hearings.   Oates Decl. ¶ 58.  *See, e.g.*, *Castagna v. Madison Square Garden, L.P.,* 2011 U.S. Dist. LEXIS 64218, at *29 (S.D.N.Y. June 7, 2011) (acknowledging Plaintiffs' counsel having "litigated th[e] entire case from its investigatory stage through settlement and th[e final approval] motion" fulfilled first *Golberger* factor).  Accordingly, the first Goldberger factor supports approval of Class Counsel's requested fee award.

### 2.  Magnitude and Complexity of the Litigation (*Goldberger* Factor 2); Risk of Litigation (*Goldberger* Factor 3)

The second and third *Goldberger* factors—the magnitude, complexity, and the risk of the litigation—also support approval of the fees requested.  Hybrid FLSA and state wage-and-hour cases are often large and complex. *See, e.g.*, *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action. . . ."); *see also Karic*, 2016 U.S. Dist. LEXIS 57782, at *16 ("[C]lass actions, especially in the context of FLSA claims, are inherently complex.").

The Action has been ongoing for over four years and involves wage-and-hour issues on a complex class and collective action hybrid basis under the NYLL and FLSA, resolving the Named Plaintiffs' NYLL claims and the other Class Members' NYLL and FLSA claims.  Moreover, as noted, risks in this litigation were substantial.   Class Counsel represented 253 Class Members in various positions purely on a contingency basis.  Oates Decl. ¶¶ 40, 44.  Defendants contested the Named Plaintiffs' claims and the class claims asserted by the Class Members.  *Id*. at ¶ 8.

 "Class and collective wage and hour cases of this type are, by their very nature,

complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy and resources." *Johnson*, 2011 U.S. Dist. LEXIS 105775, at \*50. Furthermore, "[u]ncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *See id*. (citation omitted). Thus, this factor favors awarding Class Counsel the requested fees.

### 3.   Quality of Representation (*Goldberger* Factor 4)

The fourth *Goldberger* factor, the quality of the representation, favors approval of the fees requested. "To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Surdu v. Madison Global, LLC*, 2018 U.S. Dist. LEXIS 48356, at \*31-32 (S.D.N.Y. Mar. 23, 2018) (citation omitted). Further, the fact that Class Counsel has "substantial experience in wage and hour class and collective action cases" is a factor that supports counsel's request for attorneys' fees of 29.5% of the original maximum Settlement Payment. *See Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596, at \*37-38 (S.D.N.Y. July 31, 2014).

CSM Legal, P.C. specializes in representing employees in wage and hour disputes. It has advocated for restaurant workers, construction workers, and workers in the retail, service, and hospitality industries. Oates Decl. ¶ 63. Class Counsel has substantial experience prosecuting, defending, and settling wage and hour actions; its practice is almost entirely devoted to wage and hour cases; it has experience handling collective actions under the FLSA and class actions under Rule 23; and it is well-versed in wage and hour and class action law. Oates Decl. ¶ 64. Further, the biographies of the attorneys who have worked on this matter, as set forth in the Oates Decl., indicate that they are seasoned litigators and/or well versed in employment law. Oates Decl. ¶¶ 66-70.

The parties reached a settlement for 253 Class Members. Oates Decl. ¶¶ 20, 40, 44. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is fair, reasonable, and adequate. As such, given the recovery obtained and the backgrounds of the attorneys who represented the Class members, Class Counsel should be awarded the requested attorneys' fees.

### 4.     Fee in Relation to the Settlement (*Goldberger* Factor 5)

The fees requested in relation to the settlement, the fifth *Goldberger* factor, is reasonable and consistent with fees regularly awarded by Courts in this circuit. *See Pearlstein*, 2022 U.S. Dist. LEXIS 177786, at *27 (holding that Class Counsel's request for one-third of the gross settlement fund is reasonable within this Circuit); *Martinek v. Amtrust Fin. Servs., Inc.,* 2022 U.S. Dist. LEXIS 209097, at *5 (S.D.N.Y. Nov. 16, 2022) (holding that an award of attorneys' fees of 33.33% of the Settlement Fund is reasonable given the high risk, complex issues, skill of the attorneys and the contingency nature involved in bringing this action."); *Hernandez*, 2013 U.S. Dist. LEXIS 42681, at *23 (granting attorneys' fees of $2,310,000, which is 33% settlement fund, in a wage-and-hour action). In this case, Class Counsel is seeking $25,639.00 as an award for attorneys' fees, which is approximately 29.5% of the original maximum Settlement Payment. Accordingly, this factor favors awarding Class Counsel the requested fees.

Further, Class Counsel's fee requested should be calculated as a percentage of the gross settlement made available to the Class. The Second Circuit has ruled that "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also Cohan v. Columbia Sussex Mgmt., LLC*, 2018 U.S. Dist. LEXIS 170192, at *13 (E.D.N.Y. Sept. 28, 2018) (approving attorneys' fees calculated as a percentage of the "'entire settlement fund, including the amount that will revert' to defendant"). Further, [t]he value of legal service

22

rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010).  Accordingly, Class Counsel's request for attorneys' fees should be based on a percentage of the total original maximum Settlement Payment of $86,832.00.

### 5. <u>**Public Policy Considerations (*Goldberger* Factor 6)**</u>

Court approval of the requested attorneys' fees is consistent with public policy.  "[P]ublic policy favors a common fund attorneys' fee award in wage and hour class action lawsuits." *Donnelly*, 2014 U.S. Dist. LEXIS 203725, at *19.  The "FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights." *Flores*, 2014 U.S. Dist. LEXIS 11026, at *23.  In FLSA and NYLL actions, attorneys take on the role of "private attorneys general," who must be "adequately compensated for their efforts." *DeLeon*, 2015 U.S. Dist. LEXIS 65261, at *13.  "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]." *Surdu*, 2018 U.S. Dist. LEXIS 48356, at *33 (quoting *Henry*, 2014 U.S. Dist. LEXIS 72574, at *42).  *See also, Caballero v. Senior Health Partners, Inc.*, 2018 U.S. Dist. LEXIS 207128, at *6 (E.D.N.Y. Dec. 7, 2018) ("[T]he public policy goal of providing an incentive for lawyers to take on complicated actions that assisted vulnerable communities is furthered by the attorneys' fee award in this case."); *Goldberger*, 209 F.3d at 51 (commending the "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.")

The goal of providing an incentive for other lawyers to prosecute wage and hour matters is furthered by the requested attorneys' fees award.  Therefore, public policy considerations strongly weigh in favor of approving Class Counsel's fee request.

**C.** **The Lodestar Cross-Check Further Supports an Award of Fees to Class Counsel of 29.5% of the Original Maximum Settlement Payment**

In addition to the *Goldberger* factors, the trend in the Second Circuit has been to apply the percentage method and to use the lodestar method as a "cross check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* "As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate." *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *58 (internal citation omitted).

Class Counsel spent more than 314 hours litigating and settling this matter, in which the time expended and tasks performed are detailed in Class Counsel's contemporaneous time records, attached to the Oates Decl. as Ex. 4. Based on the significant amount of work performed in this matter by Plaintiffs' attorneys and paralegals, Class Counsel's lodestar to date is $108,618.75. Oates Decl. ¶ 60; Ex. 4. Class Counsel's lodestar was calculated by multiplying the reasonable hourly rates of the attorneys and paralegals who performed tasks in this Action by the amount of time they spent on each task performed. *Id.*

Class Counsel's lodestar results in a multiplier of approximately .236. Oates Decl. ¶ 61. Further, adding the amount of the attorneys' fees subject to the settlement agreement relating to the Named Plaintiffs' FLSA claims only, which is $75,158.00, to the amount of fees requested in the within motion, i.e., $25,639.00, would only increase the multiplier to .928. *Id.* This is well within the range awarded by courts in the Second Circuit. *See, e.g., Radosti v. Hudson's Bay Co.*, 2022 U.S. Dist. LEXIS 112279, at *4 (S.D.N.Y. June 24, 2022) ("[c]ourts regularly award lodestar multipliers from two to six times loadstar") (citing *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *58-59); *De La Cruz v. Manhattan Parking Group LLC*, 2022 U.S. Dist. LEXIS 123211, at *18 (S.D.N.Y. July 12,

2022) (courts typically apply loadstar multipliers between two and six); *Beckman*, 293 F.R.D. at 481-482 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers).

Furthermore, because "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *38 (S.D.N.Y. Apr. 20, 2012) (internal quotations and citation omitted). Class counsel anticipates expending more hours after the date of this motion by, *inter alia*, preparing for and attending the Fairness Hearing, answering additional questions from the Named Plaintiffs and other Class Members, and communicating with the Claims Administrator and defense counsel. Oates Decl. ¶ 62. Accordingly, the multiplier requested in this Motion will decrease over the remainder of this Action.

Accordingly, the fact that the loadstar cross-check results in a multiplier that is well within the range of multipliers awarded by the Court provides further support that Class Counsel's requested fees are reasonable.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request the Court to grant their Motion for Final Approval of the Class Action and Collective Settlement in its entirety and enter the proposed Final Approval Order.

Dated:  New York, New York
         January 31, 2023


                                        */s/William K. Oates*
                                        William K. Oates, Esq.

25